Robert J Vanden Bos, OSB #78100
Douglas R. Ricks, OSB #044026
VANDEN BOS & CHAPMAN, LLP
319 S.W. Washington, Suite 520
Portland, Oregon 97204
TELEPHONE: (503) 241-4869
FAX: (503) 241-3731

Of Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | Case No. 16-30406-rld11 |
| | ) | |
| SeaPort Airlines, Inc., | ) | DEBTOR'S MOTION TO REJECT |
| | ) | NONRESIDENTIAL REAL PROPERTY LEASE |
| Debtor-in-Possession. | ) | (SFII Naito Old Town, LLC) |

Debtor-in-Possession SeaPort Airlines, Inc., ("Debtor"), pursuant to Sections 365

and 1108(a), of the Bankruptcy Code, moves the Court for entry of an order authorizing

Debtor to reject its Lease dated December 28, 2015 (the "Lease") with SFII Naito Old

Town, LLC ("Naito Old Town") effective April 30, 2016. A copy of the Lease is attached to

the Motion that is filed with the Court as **Exhibit A**; copies of the Lease may be obtained by

contacting Debtor's counsel using the contact information above. In support of its motion,

Debtor represents and states as follows:

On February 5, 2016, Debtor commenced a reorganization case by the filing of a

voluntary petition under Chapter 11 of the United States Bankruptcy Code. Pursuant to

§1107 and §1108 of the Code, Debtor is continuing in possession of its property and is

operating and managing its business as a debtor-in-possession.

On or about December 28, 2015, Debtor and Naito Old Town entered into a written

lease agreement whereby the Debtor would have use of office space located at the

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690--(503) 241-4869

Merchant Hotel Building, 222 NW Davis Street, Suite 202, Portland, Oregon ("Merchant Hotel").  Under the terms of the Lease, the Debtor is obligated to make monthly payments of $3,258.33 plus additional rent (share of taxes and expenses).  The term of the Lease is through December 31, 2016.  As of the filing of this motion Debtor is current on its monthly payments under the Lease.

In its efforts to reorganize, Debtor plans to move its administrative headquarters from Portland International Airport ("PDX") to another location in downtown Portland.  The Debtor has located space for its administrative offices at a lower cost than that available under the Lease with Naito Old Town plus the cost for its current administrative office at PDX.  The new space for Debtor's administrative office eliminates the need for the Merchant Hotel location, and the continued expense of the lease payments only serves to lower the value of the estate and harm Debtor's ability to successfully reorganize.  The combined monthly expense for the PDX office space and Merchant Hotel space totals $12.911.25, and the monthly rent for the new location totals $3,606.17.   Authorizing Debtor to reject its Lease effective April 30, 2016 with Naito Old Town would benefit the estate and Debtor's efforts at reorganization; it is therefore in the best interest of the estate to authorize the Debtor to reject the Lease effective April 30, 2016.

WHEREFORE, Debtor prays that the Court authorize it to reject the Lease between Debtor and Naito Old Town effective April 30, 2016.

Respectfully submitted;

VANDEN BOS & CHAPMAN, LLP


By:/s/Douglas R. Ricks
    Robert J Vanden Bos, OSB #78100
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtor

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690--(503) 241-4869

## OFFICE LEASE

SFII Naito Old Town, LLC

**"LANDLORD"**

**WITH**

Seaport Airlines, Inc.

**"TENANT"**

**BUILDING: Merchant Hotel
222 NW Davis Street, Portland, Oregon
SUITE: 202**

**DATED: December 28, 2015**

## Table Of Contents

Page

SECTION 1: BASIC PROVISIONS .................................................................................................1

SECTION 2: PREMISES AND PREPARATION OF PREMISES ..................................................2

SECTION 3: TERM AND COMMENCEMENT.................................................................................3

SECTION 4: BASE RENT AND ADDITIONAL RENT.....................................................................3

SECTION 5: QUIET ENJOYMENT ................................................................................................5

SECTION 6: UTILITIES AND SERVICES......................................................................................6

SECTION 7: DEPOSITS ................................................................................................................7

SECTION 8: USE, COMPLIANCE WITH LAWS AND RULES ......................................................7

SECTION 9: MAINTENANCE AND REPAIRS...............................................................................8

SECTION 10: ALTERATIONS AND LIENS ...................................................................................8

SECTION 11: INSURANCE AND WAIVER OF SUBROGATION...................................................9

SECTION 12: CASUALTY DAMAGE ..........................................................................................11

SECTION 13: CONDEMNATION..................................................................................................11

SECTION 14: ASSIGNMENT AND SUBLETTING ......................................................................12

SECTION 15: PERSONAL PROPERTY, RENT AND OTHER TAXES.........................................13

SECTION 16: LANDLORD'S REMEDIES....................................................................................13

SECTION 17: SUBORDINATION, ATTORNMENT AND LENDER PROTECTION ......................15

SECTION 18: ESTOPPEL CERTIFICATES ................................................................................16

SECTION 19: RIGHTS RESERVED BY LANDLORD .................................................................16

SECTION 20: LANDLORD'S RIGHT TO CURE ..........................................................................17

SECTION 21: RELEASE AND INDEMNITY ...............................................................................18

SECTION 22: RETURN OF POSSESSION.................................................................................18

SECTION 23: HOLDING OVER ...................................................................................................19

SECTION 24: NOTICES...............................................................................................................19

SECTION 25: REAL ESTATE BROKERS ...................................................................................19

SECTION 26: NO WAIVER ..........................................................................................................20

**Exhibit A Page 2 of 38**

Case 16-30406-rld11    Doc 254    Filed 04/29/16

SECTION 27: SAFETY AND SECURITY DEVICES, SERVICES AND PROGRAMS ............................20

SECTION 28: TELECOMMUNICATION LINES.....................................................................................20

SECTION 29: SUBSTANCES; DISRUPTIVE ACTIVITIES...................................................................21

SECTION 30: DISABILITIES ACTS ......................................................................................................22

SECTION 31: DEFINITIONS..................................................................................................................22

SECTION 32: OFFER ............................................................................................................................24

SECTION 33: MISCELLANEOUS.........................................................................................................24

SECTION 34: ENTIRE AGREEMENT ...................................................................................................26

EXHIBITS/RIDERS        Listed in Section 1.N

**Exhibit A Page 3 of 38**

Case 16-30406-rld11    Doc 254    Filed 04/29/16

# OFFICE LEASE

THIS OFFICE LEASE ("Lease") is made and entered into as of this 28th day of December, 2015, by and between SFII Naito Old Town LLC a Delaware Limited Liability Company ("Landlord"), and Seaport Airlines, Inc. an Alaska Corporation ("Tenant"). In consideration of this Lease, Landlord and Tenant covenant and agree as follows:

## SECTION 1: BASIC PROVISIONS

This Section contains the basic lease provisions between Landlord and Tenant.

**A. Building:** Merchant Hotel, 222 NW Davis St, Portland, Oregon (the "Building"), located on a portion of the real property legally described in Exhibit A attached hereto (the "Property").

**B. Premises:** Suite 200 in the Building as identified in Exhibit B.

**C. Commencement Date:** The Commencement Date shall occur upon the closing of Landlord's purchase of the Property from Fountain Village Development, LLC pursuant to that Purchase and Sale Agreement dated December 9, 2015 (the "Closing"). The effectiveness of this Lease is expressly contingent upon the occurrence of the Closing. Should the Closing fail to occur, this Lease shall be of no further force or effect.

**D. Expiration Date:** December 31, 2016, unless Tenant provides advance, 30 day written notice to Landlord of intent to terminate earlier.

**E. Rentable Area:** The rentable area of the Premises shall be deemed to contain 1,564 rentable square feet ("RSF"), subject to Section 31(M).

**F. Tenant's Share:** 3.1%, subject to Section 4 and Section 31(M), based upon a total of 50,215 rentable square feet in the Building.

**G. Base Rent:** From the Commencement Date through the Expiration Date, as further described in Section 4, as follows:

| Period | $/RSF/ Year | Monthly Base Rent |
|---|---|---|
| Commencement Date – December 31, 2016 | $25.00 | $3,258.33 |

**H. Additional Rent:** Tenant shall pay Tenant's Share of Taxes and Tenant's Share of Expenses in excess of such amounts for the fiscal year 2015-2016 ("Base Tax Year") and the calendar year 2016 (the "Base Expense Year"), respectively, as further described in Section 4.

**I. Permitted Use:** Executive and administrative office use, subject to Section 8.

**J. Deposits:** None.

**K. Parking:** None.

**L. Broker (if any):** None.

**M. Guarantor(s):** None.

1

**N. Riders/Exhibits:** Exhibit A (Property)
Exhibit B (Premises)
Rider One (Rules)
Rider Two (Green Addendum)

**O. Landlord's Notice Address (subject to Section 24):**

Swift Real Estate Partners
RE: Merchant Hotel
Attn: Thomas Christman
260 California St, Suite 300
San Francisco, CA 94111

**P. Tenant's Notice Address (subject to Section 24):**

Beardsley Building Management, LLC
115 SW Ash Street, Suite 500
Portland, OR 97204
Attn: John P. Beardsley

**Q. Rent Payments:** Rent shall be paid to the following, or to such other parties and addresses as to which Landlord shall provide advance notice:

Swift Real Estate Partners
RE: Merchant Hotel
Attn: ACCOUNTING DEPARTMENT
260 California St, Suite 300
San Francisco, CA 94111

The foregoing provisions shall be interpreted and applied in accordance with the other provisions of this Lease. The terms of this Section, and the terms defined in Section 31 and other Sections, shall have the meanings specified therefor when used as capitalized terms in other provisions of this Lease or related documentation (except as expressly provided to the contrary therein).

## SECTION 2: PREMISES AND PREPARATION OF PREMISES

**A.    Premises.** Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the Premises subject to the provisions herein contained. Tenant currently occupies the Premises (and portions of the Building providing access to or serving the Premises) and agrees to accept the same "as is" without any agreements, representations, understandings or obligations on the part of Landlord to perform any alterations, repairs or improvements. Tenant further acknowledges that Landlord has not made any representation or warranty (express or implied) with respect to the habitability, condition or suitability of the Premises, Building or Property for Tenant's purposes or any particular purpose.

**B.    Preparation of Premises.** Tenant agrees to continue occupying the Premises on the Commencement Date in its existing "As Is" condition without any agreement, representation or obligation on the part of Landlord to perform or provide any alterations, improvements, repairs or allowance of any kind. Any alterations or improvements to the Premises shall be at Tenant's sole cost and expense and subject to all provisions of Section 10, including without limitation the prior approval of Landlord.

2

## SECTION 3: TERM AND COMMENCEMENT

**A.** **Term and Confirmation.** The term ("Term") of this Lease shall commence on the Commencement Date and end on the Expiration Date as specified in Section 1 above, unless sooner terminated as provided herein, subject to adjustment as provided below and the other provisions hereof.

**B.** **Early Termination.** Tenant may provide advance, 30 day written notice to Landlord of intent to terminate before the fixed Expiration Date.

## SECTION 4: BASE RENT AND ADDITIONAL RENT

**A.** **Base Rent.** Subject to adjustment for expenses, taxes and required capital expenditures as set forth in this Section 4, Tenant shall pay Landlord the monthly Base Rent set forth in Section 1 in advance on or before the first day of each calendar month during the Term; provided, Tenant shall pay Rent for the first full calendar month for which Rent shall be due (and any initial partial month) when Tenant executes this Lease.

**B.** **Taxes and Expenses.** Tenant shall pay Landlord "Tenant's Share of Taxes" and "Tenant's Share of Expenses" in the manner described below. All such charges shall be deemed to constitute "Additional Rent" which shall be deemed to accrue uniformly during the calendar year in which the payment is due.

(i)     During each calendar year after the Base Tax Year and Base Expense Year identified in Section 1(H) above, Tenant agrees to pay as "Additional Rent" for the Premises, "Tenant's Share" (defined below) of all increases in Taxes and Expenses incurred by Landlord in the operation of the Building and Property, over the amount of the Taxes and Expenses incurred by Landlord in the operation of the Building and Property during the Base Tax Year and Base Expense Year, respectively. For purposes of this Lease, "Tenant's Share" shall mean the ratio between the rentable area of the Premises and the rentable area of the Building. Tenant's Share, calculated based on the initial square foot area of the Premises, is set forth in Section 1(F) above, and is subject to adjustment as set forth in Section 31(M).

(ii)     Prior to or promptly after the commencement of each calendar year following the Base Tax Year and Base Expense Year, Landlord shall give Tenant a written estimate of the anticipated increases in Taxes and Expenses over the Base Tax Year and Base Expense Year and Tenant's Share of such increases. Tenant shall pay such estimated amount to Landlord in equal monthly installments, in advance, without deduction or offset, on or before the first day of each calendar month, with the monthly installment of Base Rent payable Section 4(A) above. After the end of each calendar year, Landlord shall furnish to Tenant a statement showing in reasonable detail the actual increases over the Base Tax Year and Base Expense Year in the Taxes and Expenses incurred by Landlord during the applicable calendar year and Tenant's Share thereof. If the statement shows Tenant's Share of the actual increases exceeds the amount of Tenant's estimated payments, within thirty (30) days after receiving the statement, Tenant shall pay the amount of the deficiency to Landlord. If the statement shows Tenant has overpaid, the amount of the excess shall be credited against installments next coming due under this Section 4; provided, however upon the expiration or earlier termination of the Lease Term, if Tenant is not then in default under this Lease, Landlord shall refund the excess to Tenant.

(iii)     If at any time during any calendar year of the Lease Term (other than during the Base Tax Year or Base Expense Year) the Taxes applicable to the Building and Property change and/or any information used by Landlord to calculate the estimated Expenses changes, Tenant's estimated share of such Taxes and/or Expenses, as applicable, may be adjusted accordingly effective as of the month in which such changes become effective, by written notice from Landlord to Tenant of the amount or estimated amount of the change, the month in which effective, and Tenant's Share thereof. Tenant shall pay such increase to Landlord as a part of Tenant's monthly payments of estimated Taxes or Expenses

4849-8088-4759, v. 2

as provided above, commencing with the month following the month in which Tenant is notified of the adjustment.

(iv)     For purposes of this Lease, the term "Expenses" means all costs of and expenses paid or incurred by Landlord for maintaining, operating, repairing, replacing and administering the Building and Property, including all common areas and facilities and Systems and Equipment, and shall include the following costs by way of illustration but not limitation:  water and sewer charges; insurance premiums; license, permit, and inspection fees; heat; light; power; steam; janitorial and security services; labor; salaries; air conditioning; landscaping; maintenance and repair of driveways and surface areas; supplies; materials; equipment; tools; the cost of capital replacements (as opposed to capital improvements); the cost of any capital improvements or modifications made to the Building by Landlord that are intended to reduce Expenses, are required under any Laws not applicable to the Building or Property or not in effect at the time the Building was constructed, or are made for the general benefit and convenience of all tenants of the Building; all property management costs, including office rent for any property management office and professional property management fees; legal and accounting expenses; and all other expenses or charges which, in accordance with industry standard accounting and management practices, would be considered an expense of maintaining, operating, repairing, replacing or administering the Building or Property. Capital costs included in Expenses shall be amortized over such reasonable period as Landlord shall determine with a return on capital at the current market rate per annum on the unamortized balance or at such higher rate as may have been paid by Landlord on funds borrowed for the purpose of constructing such capital replacements or improvements.

(v)     For purposes of this Lease, the term "Taxes" means all real estate taxes or personal property taxes and other taxes, surcharges and assessments, unforeseen as well as foreseen, which are levied with respect to the Building and Property and any improvements, fixtures and equipment and other property of Landlord, real or personal, located in the Building or on the Property and used in connection with the operation of the Building or Property and any tax, surcharge or assessment which shall be levied in addition to or in lieu of real estate or personal property taxes, other than taxes covered in Section 15. The term "Taxes" shall also include any rental, excise, sales, transaction, privilege, or other tax or levy, however denominated, imposed upon or measured by the rental reserved hereunder or on Landlord's business of leasing the Premises, excepting only net income, inheritance, gift and franchise taxes.

(vi)     Notwithstanding anything to the contrary contained above, as to each specific category of expense which one or more tenants of the Building, at Landlord's sole discretion, either pays directly to third parties or specifically reimburses to Landlord (e.g., separately metered utilities, separately contracted janitorial service, property taxes directly reimbursed to Landlord, etc.) such tenant(s) payments with respect thereto shall not be included in Expenses for purposes of this Paragraph 4, but Tenant's Share of each of such category of expense shall be adjusted by excluding from the denominator thereof the rentable area of all such tenants paying such category of expense directly to third parties or reimbursing the same directly to Landlord.  Tenant shall not enter into separate contracts to provide any specific utility or service normally provided by the Building, without Landlord's prior written consent in Landlord's sole discretion.  Moreover, if Tenant pays or directly reimburses Landlord for any such category of expense (which shall only be Landlord's prior consent), such category of expense shall be excluded from the determination of Expenses for Tenant to the extent such expense was incurred with respect to space in the Building actually leased to or occupied by other Tenants.

(vii)     [Intentionally Deleted.]

C.     **Prorations.**  If the Term commences on a day other than the first day of a calendar month or ends on a day other than the last day of a calendar month, the Base Rent and any other amounts payable on a monthly basis shall be prorated on a per diem basis for such partial calendar months.  If the Base Rent is scheduled to increase under Section 1 other than on the first day of a calendar month, the amount for such month shall be prorated on a per diem basis to reflect the number of days of such month at the then current and increased rates, respectively.  If the Term commences other

4

than on January 1, or ends other than on December 31, Tenant's obligations to pay amounts under this Section 4 towards Taxes and Expenses for such first or final calendar years shall be prorated on a per diem basis to reflect the portion of such years included in the Term.

    **D.    Payments After Lease Term Ends.**  Tenant's obligations to pay its share of Taxes and Expenses (or any other amounts) as provided in this Lease accruing during, or relating to, the period prior to expiration or earlier termination of this Lease, shall survive such expiration or termination. Landlord may reasonably estimate all or any of such obligations within a reasonable time before, or anytime after, such expiration or termination. Tenant shall pay the full amount of such estimate, and any additional amount due after the actual amounts are determined, in each case within ten (10) days after Landlord sends a statement therefor. If the actual amount is less than the amount Tenant pays as an estimate, Landlord shall refund the difference within thirty (30) days after such determination is made.

    **E.    Landlord's Accounting Practices and Records.**  Unless Tenant takes exception by notice to Landlord within thirty (30) days after Landlord provides any statement to Tenant for any item of Additional Rent, such statement shall be considered final and binding on Tenant (except as to additional Expenses or Taxes not then known or omitted by error). If Tenant takes exception by notice within such time, Landlord may seek confirmation from Landlord's independent certified public accountant as to the proper amount of Taxes and Expenses determined in accordance with sound accounting practices. In such case: (i) such confirmation shall be considered final and binding on both parties (except as to additional expenses or taxes not then known or omitted by error), and (ii) Tenant shall pay Landlord for the cost of such confirmation, unless it shows that Taxes and Expenses were overstated by at least five percent (5%). Pending resolution of any such exceptions, Tenant shall pay all amounts shown on such Landlord's statement, subject to credit, refund or additional payment after any such exceptions are resolved.

    **F.    General Payment Matters.**  Base Rent, Additional Rent which includes without limitation Tenant's Share of Taxes, Tenant's Share of Expenses and any other amounts which Tenant is or becomes obligated to pay Landlord under this Lease or other agreement entered in connection herewith, are sometimes herein referred to collectively as "Rent," and all remedies applicable to the non payment of Rent shall be applicable thereto. Rent shall be paid in good funds and legal tender of the United States of America without prior demand, deduction, recoupment, set-off or counterclaim, and without relief from any valuation or appraisement laws. Rent obligations hereunder are independent covenants. In addition to all other Landlord remedies (i) any Rent not paid by Tenant when due shall accrue interest from the due date at the Default Rate until payment is received by Landlord and (ii) in addition to such interest, Tenant shall pay Landlord a service charge of two hundred fifty dollars ($250.00) or five percent (5%) of the delinquent amount, whichever is greater, if any portion of Rent is not received within five (5) business days after the due date. No delay by Landlord in providing any Rent statement to Tenant shall be deemed a default by Landlord or a waiver of Landlord's right to require payment of Tenant's obligations hereunder including those for actual or estimated taxes, expenses or capital expenditures. In no event shall a decrease in Taxes or Expenses, below their respective Base Tax Year and Base Expense Year levels, ever decrease the monthly Base Rent or give rise to a credit in favor of Tenant. Landlord may apply payments received from Tenant to any obligations of Tenant then accrued, without regard to such obligations as may be designated by Tenant.

## SECTION 5: QUIET ENJOYMENT

    Landlord agrees that if Tenant timely pays the Rent and performs the terms and provisions hereunder, Tenant shall hold the Premises during the Term, free of lawful claims by any party acting by or through Landlord, subject to all other terms and provisions of this Lease.

4849-8088-4759, v. 2

**Exhibit A Page 8 of 38**

Case 16-30406-rld11    Doc 254    Filed 04/29/16

## SECTION 6: UTILITIES AND SERVICES

**A.    Standard Landlord Utilities and Services.**  Provided Tenant is not in default of this Lease, Landlord shall provide Tenant the following utilities and services:

(i)    Elevator service during normal business hours of the Building and the service of at least one elevator during all other hours.

(ii)    Heating and cooling to maintain a temperature condition which in Landlord's judgment provides for comfortable occupancy of the Premises under normal business operations from 7:00 a.m. to 6:00 p.m. Monday through Friday, and 8:00 a.m. – 1:00 p.m. Saturdays, but not Sundays or those legal holidays generally observed in the State of Oregon, provided Tenant complies with Landlord's instructions regarding use of window coverings and thermostats and Tenant does not utilize heat generating machines or equipment which affect the temperature otherwise maintained by the air cooling system. Upon request Landlord shall make available at Tenant's expense after-hours heat or air cooling.  The minimum use of after-hours heat or air cooling and the cost thereof shall be determined by Landlord and confirmed in writing to Tenant, as the same may change from time to time.

(iii)    Water for drinking, lavatory, and toilet purposes.

(iv)    Electricity for building-standard overhead office lighting fixtures, and equipment and accessories customary for offices (up to 280 hours per month), where: (a) the connected electrical load of all of the same does not exceed an average of 4 watts per usable square foot of the Premises (or such lesser amount as may be available, based on the safe and lawful capacity of the electrical circuit(s) and facilities serving the Premises), (b) the electricity is at nominal 120 volts, single phase (or 110 volts, depending on available service in the Building), and (c) the systems and equipment are suitable, the safe and lawful capacity thereof is not exceeded, and sufficient capacity remains at all times for other existing and future tenants, as determined in Landlord's reasonable discretion.

(v)    Janitorial service as customary for comparable buildings within the market which includes vacuum cleaning of carpets and cleaning of Building standard vinyl composition tile, but no other services with respect to carpets or non standard floor coverings.

(vi)    Maintain the windows, doors, floors and walls (exclusive of coverings), ceilings, plumbing and plumbing fixtures, and electrical distribution system and lighting fixtures in good condition and repair, except for damage caused by Tenant, its employees, agents, invitees or visitors, except that such service will not be provided as to any of the foregoing items that are not standard for the Building.

(vii)    Replacement of burned out fluorescent lamps in light fixtures which are standard for the Building.  Burned out lamps or other light sources in fixtures which are not standard for the Building will be replaced by Landlord at Tenant's expense.

**B.    Interruptions.**  Landlord shall use reasonable diligence to remedy an interruption in the furnishing of such services and utilities.  If, however, any governmental authority imposes regulations, controls or other restrictions upon Landlord or the Building which would require a change in the services provided by Landlord under this Lease, Landlord may comply with such regulations, controls or other restrictions, including without limitation, curtailment, rationing or restrictions on the use of electricity or any other form of energy serving the Premises.  Tenant will cooperate and do such things as are reasonably necessary to enable Landlord to comply with such regulations, controls or other restrictions.

**C.    Non-Standard Usage.**  Whenever heat generating machines or equipment or lighting other than building standard lights are used in the Premises by Tenant which affect the temperature otherwise maintained by the air cooling system, Landlord shall have the right to install supplementary air cooling units in the Premises, and the cost thereof, including the cost of installation and the cost of

4849-8088-4759, v. 2

operation and maintenance thereof, shall be paid by Tenant to Landlord upon billing by Landlord. Landlord may impose a reasonable charge for utilities and services, including without limitation, air cooling, electric current and water, required to be provided the Premises by reason of (a) any substantial recurrent use of the Premises at any time other than the hours of 7:00 a.m. to 6:00 p.m. Monday to Friday, and 8:00 a.m. to 1:00 p.m. on Saturdays, (b) any use beyond what Landlord agrees to furnish as described above, (c) electricity used by equipment designated by Landlord as high power usage equipment or (d) the installation, maintenance, repair, replacement or operation of supplementary air cooling equipment, additional electrical systems or other equipment required by reason of special electrical, heating, cooling or ventilating requirements of equipment used by Tenant at the Premises. High power usage equipment includes without limitation, data processing machines, punch card machines, computers and machines which operate on 220-volt circuits. Tenant shall not install or operate high power usage equipment on the Premises without Landlord's prior written consent, which may be refused unless (i) Tenant confirms in writing its obligation to pay the additional charges necessitated by such equipment and such equipment does not adversely affect operation of the Building, and (ii) the Building electrical capacity to the floor(s) containing the Premises will not be exceeded. At Landlord's option, separate meters for such utilities and services may be installed for the Premises and Tenant upon demand therefor, shall immediately pay Landlord for the installation, maintenance, repair and replacement of such meters.

      **D.**    **Limitation.** Landlord does not warrant that any of the services and utilities referred to above will be free from interruption. Interruption of services and utilities shall not be deemed an eviction or disturbance of Tenant's use and possession of the Premises or any part thereof or render Landlord liable to Tenant for damages or loss of any kind, or relieve Tenant from performance of Tenant's obligations under this Lease.

      **E.**    **Utility Providers.** Notwithstanding anything to the contrary in this Lease, Landlord shall have the sole, exclusive and absolute right to determine, select and contract with utility company or companies that will provide electricity and other basic utility service to the Building, Property and Premises. If permitted by law, during the Term of this Lease, Landlord shall have the right at any time, and from time to time, to either contract for services from a different company or companies providing electricity or other basic utility service (each such company hereinafter an "Alternate Service Provider") or continue to contract for service from the service provider(s) that is providing such utility service to the Building, Property or Premises at the Commencement Date (each the "Existing Service Provider"). Tenant shall cooperate with Landlord, the Existing Service Provider and any Alternate Service Provider at all times and, as reasonably necessary, shall allow Landlord, the Existing Service Provider and any Alternate Service Provider access to the Building's utility lines, plumbing, feeders, risers, wiring, and any other machinery or utility access ways within the Premises.

SECTION 7: DEPOSITS

      **A.**    **Security Deposit.** [Intentionally Deleted.]

SECTION 8: USE, COMPLIANCE WITH LAWS AND RULES

      **A.**    **Use of Premises and Compliance with Laws.** Tenant shall use the Premises solely for the purposes set forth in Section 1 and for no other purpose without obtaining the prior written consent of Landlord, which shall not be unreasonably withheld for uses consistent with Landlord's then existing use criteria for the Building. Tenant acknowledges that neither Landlord nor any agent of Landlord has made any representation or warranty with respect to the Premises or with respect to the suitability of the Premises or the Building for the conduct of Tenant's business, nor has Landlord agreed to undertake any modification, alteration or improvement to the Premises or the Building, except as provided in writing in this Lease. Tenant acknowledges that Landlord may from time to time, at its sole discretion, make such modifications, alterations, repairs, deletions or improvements to the Building or Property as Landlord may deem necessary or desirable, without compensation or notice to Tenant, provided that such alterations,

7

4849-8088-4759, v. 2

repairs, deletions or improvements shall not materially adversely affect Tenant's use of the Premises during normal daytime business hours and in no event shall Landlord be liable for any consequential damages. Tenant shall promptly comply with all Laws affecting the Premises and the Building, as well as the Rules (defined below), and to any reasonable modifications to the Rules as Landlord may adopt from time to time. Tenant acknowledges that, except for Landlord's obligations pursuant to Sections 9 and 30, Tenant is solely responsible for ensuring that the Premises comply with any and all Laws applicable to Tenant's use and conduct of business on the Premises, and that Tenant is solely responsible for any alterations or improvements that may be required by such Laws, now existing or hereafter adopted. Tenant shall not do or permit anything to be done in or about the Premises or bring or keep anything in the Premises that will in any way increase the premiums paid by Landlord on its insurance related to the Building or which will in any way increase the premiums for fire or casualty insurance carried by other tenants in the Building. Tenant will not perform any act or carry on any practices that may injure the Premises or the Building that may be a nuisance or menace to other tenants in the Building or that shall in any way interfere with the quiet enjoyment of such other tenants. Tenant shall not do anything on the Premises which will overload any existing parking or service to the Premises.

      **B.**    **Rules.** Tenant shall comply with the Rules set forth in Rider One and Rider Two attached hereto (the "Rules") in addition to all other terms of this Lease. Landlord shall have the right, by notice to Tenant or by posting at the Building, to reasonably amend such Rules and supplement the same with other reasonable Rules relating to the Building or Property, or the promotion of safety, care, efficiency, cleanliness or good order therein. Nothing herein shall be construed to give Tenant or any other Person any claim, demand or cause of action against Landlord arising out of the violation of such Rules by any other tenant or visitor of the Building or Property, or out of the enforcement, modification or waiver of the Rules by Landlord in any particular instance.

<h3 style="text-align:center">SECTION 9: MAINTENANCE AND REPAIRS</h3>

      Unless expressly provided otherwise in this Lease, and in addition to the provisions of Section 6(A)(vi), Landlord shall maintain, in good condition, the common areas of the Building, the structural parts of the Building which shall include only the foundations, bearing and exterior walls, subflooring, gutters, downspouts, and the roof of the Building and the Building Systems and Equipment; provided, in the event any such replacements, repairs or maintenance are caused by or result from Tenant's excessive or improper use or occupation thereof or which are caused by or result from the negligence or improper conduct of Tenant, its agents, employees or invitees, the cost of such repairs shall be paid solely by Tenant and Tenant shall pay the cost thereof within ten (10) days of notice from Landlord. Except as provided above, and subject to Section 10 of this Lease, Tenant shall maintain and repair the Premises in neat, clean, sanitary and good condition, including, without limitation, maintaining and repairing all walls, storefronts, ceilings, interior and exterior doors, exterior and interior windows and fixtures, Premises' specific systems and equipment, and interior plumbing serving the Premises as well as any damage to the Building, Property or Premises caused by Tenant, its agents, employees or invitees. If Tenant shall fail to keep and preserve the Premises in said condition and state or repair, Landlord may, at its option (but with no obligation) put or cause the same to be put into the condition and state of repair agreed upon, and in such case Tenant, on demand, shall pay the cost thereof.

<h3 style="text-align:center">SECTION 10: ALTERATIONS AND LIENS</h3>

      **A.**    **Alterations.** Tenant shall not attach any fixtures, equipment or other items to the Premises, or paint or make any other additions, changes, alterations, repairs or improvements (collectively hereinafter "alterations") to the Premises, Building or Property without Landlord's prior written consent, which with respect to alterations to the Premises will not be unreasonably withheld so long as Tenant is not then, nor has been, in default of this Lease (beyond any applicable cure period). If Landlord consents to any alteration, Landlord may post notices of nonresponsibility in accordance with law. Any alterations so made shall remain on and be surrendered with the Premises upon expiration or earlier termination of this Lease, except that Landlord may, within thirty (30) days before or thirty (30) days after

8

expiration or earlier termination hereof elect to require Tenant to remove any or all alterations at Tenant's sole costs and expense. At the time Tenant submits plans for requested alterations to Landlord for Landlord's approval, Tenant may request Landlord to identify which alterations Landlord may require Tenant to remove at the termination of or expiration of this Lease, and Landlord shall make such identification simultaneous with its approval (if any) of the alterations. If Landlord elects to require removal of alterations, then at its own and sole cost Tenant shall restore the Premises to the condition designated by Landlord in its election, before the last day of the term or within thirty (30) days after notice of its election is given, whichever is later.

**B.  Performance.** In the event Landlord consents in writing to Tenant's requested alteration of the Premises, Tenant shall only contract with a contractor approved by Landlord for the construction of such alterations, shall secure all appropriate governmental approvals and permits and shall complete such alterations with due diligence, in a neat, clean, good and workmanlike manner and in strict compliance with the plans and specifications approved by Landlord. All such construction shall be performed in a manner which shall not interfere with the occupancy of the other tenants of the Building. All cost, expenses and fees related to or arising from construction of any alteration shall be paid by Tenant prior to delinquency. There shall also be included within the cost of any such alteration work (whether for initial tenant improvements or for any subsequent alteration) a fee to Landlord for Tenant's use of Landlord's personnel involved in the supervision, coordination, inspection and the like pertaining to such work. Said fee shall be ten percent (10%) of the total cost of the alteration work (including costs of plans and permits), plus Landlord's out-of-pocket costs (if any), which shall be paid by Tenant within ten (10) days after presentment by Landlord of an invoice therefor. Landlord may impose additional reasonable conditions and rules respecting the manner and times in which such alteration work may be performed.

**C.  Liens.** Tenant shall pay all costs for alterations when due. Tenant shall keep the Property, Building, Premises and this Lease free from any mechanic's, materialman's, architect's, engineer's or similar liens or encumbrances, and any claims therefor, or stop or violation notices, in connection with any alteration. Tenant shall remove any such claim, lien or encumbrance, or stop or violation notices of record, by bond or otherwise within thirty (30) days after notice by Landlord. If Tenant fails to do so, such failure shall constitute a default by Tenant, and Landlord may, in addition to any other remedy, pay the amount (or any portion thereof) or take such other action as Landlord deems necessary to remove such claim, lien or encumbrance, or stop or violation notices, without being responsible for investigating the validity thereof. The amount so paid and costs incurred by Landlord shall be deemed additional Rent under this Lease payable upon demand, without limitation as to other remedies available to Landlord. Nothing contained in this Lease shall authorize Tenant to do any act which shall subject Landlord's title to, or any Lender's interest in, the Building, Property or Premises to any such claims, liens or encumbrances, or stop or violation notices, whether claimed pursuant to statute or other Law or express or implied contract.

## SECTION 11:  INSURANCE AND WAIVER OF SUBROGATION

**A.  Insurance.** During the term of this Lease, Tenant, at its sole cost and expense, shall continuously maintain the following types of insurance coverages: (i) All Risk or Causes of Loss - Special Form property insurance, including fire and extended coverage, sprinkler leakage, vandalism, malicious mischief, wind and flood coverage, covering full replacement value of all of Tenant's personal property, trade fixtures and improvements and alterations in and to the Premises, with coverages that also include "Business Personal Property" and "Business Income Coverage" covering at least one year of anticipated income; (ii) both worker's compensation insurance to the applicable statutory limit, if any, and employer's liability insurance to the limit of $500,000 per occurrence; (iii) commercial general liability insurance (occurrence based) insuring Tenant against any liability arising out of its use, occupancy or maintenance of the Premises or Building, or the business operated by Tenant pursuant to the Lease, and providing coverage for death, bodily injury and disease, property damage or destruction (including loss of use), products and completed operations liability, contractual liability which includes all of Tenant's indemnity

4849-8088-4759, v. 2

obligations under this Lease (and the certificate evidencing Tenant's insurance coverage shall state that the insurance includes the liability assumed by Tenant under this Lease), fire legal liability and advertising injury liability damage with a combined single limit of no less than $5,000,000 (or in the alternative a primary policy combined single limit of $2,000,000 with an Excess Limits (Umbrella) Policy in the amount of no less than $3,000,000); and (iv) Business Automobile Liability Insurance for Tenant owned vehicles (only) in the amount of $1,000,000 combined single limit (property damage and liability). The amount of any deductible or self-insured retention for the coverages described in (i) and (iii) shall not exceed Five Thousand Dollars ($5,000.00), and any deductible or self-insurance provisions under any other insurance policies required to be maintained by Tenant shall be subject to Landlord's prior written approval, such approval not to be unreasonably withheld.

### B. Additional Requirements.

(i)     All insurance required to be carried by Tenant hereunder shall include the following provisions: (a) shall name Landlord, Landlord's property manager, and Landlord's lender (if any) as additional insureds; (b) shall release Landlord (and its property manager and lender, if any) from any claims for damage to business or to any person or the Premises, the Building and the Property and to Tenant's fixtures, personal property, improvements and alterations in or on the Premises, caused by or resulting from risks insured against under any insurance policy carried by Tenant in force at the time of such damage; (c) shall be issued by Insurance companies authorized to do business in the State of Oregon, with policyholder ratings not lower than "A-" and financial ratings not lower than "VII" in Best's Insurance Guide (latest edition in effect as of the date of this Lease and subsequently in effect as of the date of renewal of the required policies); (d) shall be issued as (and separately endorsed as) a primary and noncontributory policy as such policies apply to Landlord (except for workers compensation); and (e) shall contain an endorsement requiring at least thirty (30) days prior written notice of cancellation to Landlord and Landlord's lender (if any), before cancellation or change in coverage, scope or amount of any policy. Tenant shall deliver certificates of such policies together with evidence of payment of all current premiums to Landlord within thirty (30) days of execution of this Lease; provided, if such certificates do not on their face evidence such terms, Tenant shall also provide full copies of such endorsements or policies as necessary to evidence that all of the coverage requirements of this Section 11 have been satisfied by Tenant. Any certificate of insurance shall designate Tenant as the insured, specify the Premises location, list Landlord (and its property manager and lender, if any) as additional insureds (with the additional insured endorsement attached thereto), and list Landlord with Landlord's current address as "Certificate Holder." If certificates are supplied (rather than the policies), Tenant shall allow Landlord, at all reasonable times, to inspect the policies of insurance required herein. Tenant shall take all necessary steps to renew all insurance at least thirty (30) days prior to such insurance expiration dates and shall provide Landlord a copy of the renewed certificate, prior to said policy's expiration date. If Tenant fails at any time to maintain the insurance required by this Lease, and fails to cure such default within five (5) business days of written notice from Landlord then, in addition to all other remedies available under this Lease and applicable law, Landlord may purchase such insurance on Tenant's behalf and the cost of such insurance shall be Additional Rent due within ten (10) days of written invoice from Landlord to Tenant.

(ii)     It is expressly understood and agreed that the coverages required by this Section 11 represent Landlord's minimum requirements and such are not to be construed to void or limit Tenant's obligations contained in this Lease, including without limitation Tenant's indemnity obligations hereunder. Neither shall (a) the insolvency, bankruptcy or failure of any insurance company carrying Tenant, (b) the failure of any insurance company to pay claims occurring nor (c) any exclusion from or insufficiency of coverage be held to affect, negate or waive any of Tenant's indemnity obligations under this Lease or any other provision of this Lease. Landlord reserves the right to require Tenant provide evidence of any additional insurance as it reasonably deems appropriate, as well as the right to require an increase in the amounts of insurance or the insurance coverages as Landlord may reasonably request from time to time, but not in excess of the requirements of prudent landlords or lenders for similar tenants occupying similar premises in the Portland metropolitan area. Tenant's occupancy of the Premises without delivering the

**Exhibit A Page 13 of 38**

certificates of insurance shall not constitute a waiver of Tenant's obligations to provide the required coverages. If Tenant provides to Landlord a certificate that does not evidence the coverages required herein, or that is faulty in any respect, such shall not constitute a waiver of Tenant's obligations to provide the proper insurance

     **C.    Waiver of Subrogation.** Landlord and Tenant release and relieve the other, and waive the entire right of recovery for loss or damage to property located within or constituting a part or all of the Premises, the Building or the Property to the extent that the loss or damage is actually covered (and claim amount recovered) by commercial insurance carried by either party and in force at the time of such loss or damage. This waiver applies whether or not the loss is due to the negligent acts or omissions of Landlord or Tenant, or their respective officers, directors, employees, agents, contractors, or invitees. Each of Landlord and Tenant shall have their respective property insurers endorse the applicable insurance policies to reflect the foregoing waiver of claims, provided, however, that the endorsement shall not be required if the applicable policy of insurance permits the named insured to waive rights of subrogation on a blanket basis, in which case the blanket waiver shall be acceptable.

## SECTION 12: CASUALTY DAMAGE

     In the event the Building or Premises shall be destroyed or rendered untenantable, either wholly or in part, by fire or other casualty, Landlord may, at its option, restore the Building or Premises to as near their previous condition as is reasonably possible and in the meantime the Rent shall be abated in the same proportion as the untenantable portion of the Premises bears to the whole thereof, provided, such abatement (i) shall apply only to the extent the Premises are untenantable for the purposes permitted under this Lease and not used by Tenant as a result thereof, and (ii) shall not apply if Tenant or any other occupant of the Premises or any of their agents, employees, invitees, transferees or contractors caused the damage. Unless Landlord, within sixty (60) days after the happening of any such casualty, shall notify Tenant of its election to so restore, this Lease shall thereupon terminate and end, provided, if in Landlord's estimation the Premises cannot be restored within one hundred twenty (120) days following such destruction, Landlord shall notify Tenant and Tenant may terminate this Lease (regardless of Landlord's intent to restore) by delivery of notice to Landlord within thirty (30) days of Landlord's notice. Such restoration by Landlord shall not include replacement of furniture, equipment or other items that do not become part of the Building or any improvements to the Premises in excess of those provided for in the allowance for building standard items. Tenant agrees that the abatement of Rent as provided above shall be Tenant's sole and exclusive recourse in the event of such damage, and Tenant waives any other rights Tenant may have under applicable Law to perform repairs or terminate the Lease by reason of damage to the Building or Premises.

## SECTION 13: CONDEMNATION

     If at least fifty percent (50%) of the rentable area of the Premises shall be taken by power of eminent domain or condemned by a competent authority or by conveyance in lieu thereof for public or quasi-public use ("Condemnation"), including any temporary taking for a period of one year or longer, this Lease shall terminate on the date possession for such use is so taken. If: (i) less than fifty percent (50%) of the Premises is taken, but the taking includes or affects a material portion of the Building or Property, or the economical operation thereof, (ii) less than fifty percent (50%) of the Premises are taken and in the reasonable judgment of Landlord the remaining Premises are not usable for the business of Tenant, or (iii) the taking is temporary but will be in effect for more than thirty (30) days, then in either such event, Landlord may elect to terminate this Lease upon at least thirty (30) days' prior notice to Tenant. The parties further agree that: (a) if this Lease is terminated, all Rent shall be apportioned as of the date of such termination or the date of such taking, whichever shall first occur, (b) if the taking is temporary, Rent shall not be abated for the period of the taking, but Tenant may seek a condemnation award therefor (and the Term shall not be extended thereby), and (c) if this Lease is not terminated but any part of the Premises is permanently taken, the Rent shall be proportionably abated based on the square footage of the Premises so taken. Landlord shall be entitled to receive the entire award or payment in connection with such Condemnation and Tenant hereby assigns to Landlord any interest therein for the value of

4849-8088-4759, v. 2

**Exhibit A Page 14 of 38**

Tenant's unexpired leasehold estate or any other claim and waives any right to participate therein, and Tenant shall make no claim against Landlord for termination of the leasehold interest or interference with Tenant's business. Tenant, however, shall have the right to claim damages from the condemning authority for a temporary taking of the leasehold as described above, for moving expenses and any taking of Tenant's personal property and for the interruption to Tenant's business, but only if such damages are awarded separately in the eminent domain proceeding and not as part of the damages recovered by Landlord.

### SECTION 14: ASSIGNMENT AND SUBLETTING

**A.  Consent Required.** Tenant shall not, without the prior written consent of Landlord, assign this Lease or any interest therein, or sublet the Premises or any part thereof, or permit the use of the Premises by any party other than Tenant or otherwise transfer this Lease (collectively "transfer"). Such consent shall be entirely discretionary with Landlord, except as otherwise provided in this Section 14. Consent to one such transfer shall not abridge or waive this provision, and all subsequent transfers shall likewise be made only upon obtaining prior written consent of Landlord. Subtenants or assignees shall become directly liable to Landlord for all obligations of Tenant hereunder, without relieving Tenant of any liability.

**B.  Transfers.** If Tenant is a corporation, then any transfer of this Lease by merger, consolidation or liquidation, or any change in the ownership of, or power to vote, the majority of its outstanding voting stock, shall constitute an assignment for the purpose of this Section 14. If Tenant is a partnership or limited liability company, any transfer of this Lease by merger, consolidation, liquidation or dissolution, or any change in the ownership of a majority of the partnership or membership interests, shall constitute an assignment for the purposes of this Section 14. An assignment forbidden within the meaning of this Section includes without limitation one or more sales or transfers, by operation of law or otherwise, or creation of new stock, by which an aggregate of more than fifty percent (50%) of Tenant's stock shall be vested in a party or parties who are nonstockholders as of the date hereof. This Section 14(B) shall not apply if Tenant's stock is listed on a recognized security exchange or if at least eighty percent (80%) of its stock is owned by a corporation whose stock is listed on a recognized security exchange.

**C.  Recapture.** If Tenant at any time desires to transfer this Lease or any part thereof, it shall first notify Landlord in writing of its desire to do so, and offer Landlord the right to recapture, at the per square foot rental for the space then applicable pursuant to this Lease or the rental which Tenant proposed to obtain whichever is lower, for all or any part of the Premises which Tenant desires to assign or sublet. Tenant's notice to Landlord shall specify (I) the name and business of the proposed assignee or sublessee, (ii) the amount and location of this space affected, (iii) the proposed effective date and duration of the subletting or assignment, and Iv) the proposed rental to be paid to Tenant by such sublessee or assignee. Landlord, upon receipt of such notice, shall have the option, to be exercised within sixty (60) days from the date of the receipt of such notice, to require Tenant to execute an assignment to Landlord of this Lease (if Tenant desires to assign this Lease) or a sublease to Landlord of the Premises or such portion thereof as Tenant desires to sublet with the right of Landlord to sublease to others, or anyone designated by Landlord. If Landlord exercises such option and such assignment or sublease is at the rental specified in this Lease, Tenant shall be released of all further liability hereunder, from and after the effective date of such assignment or sublease, with respect to that portion of the Premises included therein. If Landlord does not exercise such option within such time, Tenant may thereafter assign this Lease or sublet the premises involved, provided Landlord consents thereto, but at a rental not less than offered to Landlord in the notice and not later than ninety (90) days after delivery of the aforesaid notice unless a further notice is given. In the event Landlord does not exercise its right to terminate this Lease or to sublet a portion of the Premises from Tenant and Landlord has granted its written consent, Tenant may assign this Lease or sublet all or a portion of the Premises in accordance with Landlord's consent. Any Rent accruing to Tenant as a result of such assignment or sublease which is in excess or the Rent then being paid by Tenant, or in excess of the pro rata share of Rent then being

4849-8088-4759, v. 2

**Exhibit A Page 15 of 38**

Case 16-30406-rld11    Doc 254    Filed 04/29/16

paid by Tenant for the portion of the Premises being sublet, shall be paid by Tenant to Landlord monthly as additional rent.

**D.      Costs.**  Whether or not Landlord consents to a proposed transfer (or exercises its right to recapture), Tenant shall reimburse Landlord on demand for any and all costs that may be incurred by Landlord in connection with any proposed transfer including, without limitation, the cost of investigating the acceptability of the proposed transferee and Landlord's reasonable attorneys' fees incurred in connection with each proposed transfer, not to exceed $1,500.

**E.      Notice.**  Any notice or request to Landlord with respect to a proposed assignment or sublease shall contain the name of the proposed assignee or subtenant (collectively "transferee"), the nature of the proposed transferee's business to be conducted at the Premises, and the terms and provisions of the proposed transfer.  Tenant shall also provide Landlord with a copy of the proposed transfer documents when available, and such financial and other information with respect to the proposed transferee and transfer that Landlord may reasonably require.

**F.      Consent.**  Notwithstanding the foregoing, in the event of a proposed transfer, if Landlord does not exercise its option under Section 14(C), then Landlord will not unreasonably withhold its consent thereto if (a) Tenant is not then, nor has been, in default of this Lease (beyond any applicable cure period), (b) the proposed transferee will continuously occupy and use the Premises for the term of the transfer, (c) the use by the proposed transferee will be the same as Tenant's use of the Premises, (d) the proposed transferee is reputable and of sound financial condition, (e) the transfer will not directly or indirectly cause Landlord to be in breach of any contractual obligation, and (f) the proposed transferee is not an existing tenant or subtenant of any other premises located on the Property.  In all other cases, Landlord may withhold consent in its sole discretion.

**G.      Terms.**  Any option(s) granted to Tenant in this Lease or any option(s) granted to Tenant in any amendments to this Lease, to the extent that said option(s) have not been exercised, shall terminate and be voided in the event this Lease is assigned, or any part of the Premises are sublet, or Tenant's interest in the Premises are otherwise transferred, unless otherwise agreed to by Landlord.

## SECTION 15: PERSONAL PROPERTY, RENT AND OTHER TAXES

Tenant shall pay prior to delinquency all taxes, charges or other governmental impositions assessed against, levied upon or otherwise imposed upon or with respect to all fixtures, furnishings, personal property, systems and equipment located in or exclusively serving the Premises, and any improvements made to the Premises under or pursuant to the provisions of this Lease.  Whenever possible, Tenant shall cause all such items to be assessed and billed separately from the other property of Landlord.  In the event any such items shall be assessed and billed with the other property of Landlord, Tenant shall pay Landlord its share of such taxes, charges or other governmental impositions within ten (10) days after Landlord delivers a statement and a copy of the assessment or other documentation showing the amount of impositions applicable to Tenant's property.  Tenant shall pay any rent tax, sales tax, service tax, transfer tax, value added tax, or any other applicable tax on the Rent, utilities or services herein, the privilege of renting, using or occupying the Premises, or collecting Rent therefrom, or otherwise respecting this Lease or any other document entered in connection herewith.

## SECTION 16: LANDLORD'S REMEDIES

**A.      Default.**  The occurrence of any one or more of the following events shall constitute a "Default" by Tenant and shall give rise to Landlord's remedies set forth in Section 16(B) below: (i) failure to make when due any payment of Rent, unless such failure is cured within three (3) days after notice from Landlord; (ii) failure to observe or perform any term or condition of this Lease other than the payment of Rent (or the other matters expressly described herein), unless such failure is cured within any period of time following notice expressly provided with respect thereto in other Sections hereof, or

13

4849-8088-4759, v. 2

Case 16-30406-rld11    Doc 254    Filed 04/29/16

otherwise within a reasonable time, but in no event more than thirty (30) days following notice from Landlord (provided, if the nature of Tenant's failure is such that more time is reasonably required in order to cure, Tenant shall not be in Default if Tenant commences to cure promptly within such period and thereafter diligently pursues its completion); (iii) failure to cure immediately upon notice thereof any condition which is hazardous, interferes with another tenant or the operation or leasing of the Property, or may cause the imposition of a fine, penalty or other remedy on Landlord or its agents or affiliates; (iv) abandonment and vacation of the Premises (failure to occupy and operate the Premises for ten (10) consecutive days while in monetary default under this Lease shall conclusively be deemed an abandonment and vacation); or (v) Tenant, or any guarantor of this Lease ("Guarantor"), filing by or for reorganization or arrangement under any Law relating to bankruptcy or insolvency (unless, in the case of a petition filed against Tenant or such Guarantor, the same is dismissed within thirty (30) days); (b) Tenant's or any Guarantor's insolvency or failure, or admission of an inability, to pay debts as they mature, or (c) a violation by Tenant or any affiliate of Tenant under any other lease or agreement with Landlord or any affiliate thereof which is not cured within the time permitted for cure thereunder. Additionally, if Tenant violates the same term or condition of this Lease on two (2) occasions during any twelve (12) month period, Landlord shall have the right to exercise all remedies for any violations of the same term or condition during the next twelve (12) months without providing further notice or an opportunity to cure. The notice and cure periods provided herein are intended to satisfy any and all notice requirements imposed by Law on Landlord and are in lieu of, and not in addition to, any notice and cure periods provided by Law; provided, Landlord may elect to comply with such notice and cure periods provided by Law. In the event of Tenant's default, and in addition to any other amounts or remedies that Landlord may be entitled to, Landlord shall be entitled to recover from Tenant, Landlord's costs and reasonable attorney fees incurred in enforcing this Lease or otherwise arising from Tenant's default.

**B.    Remedies.**  If a Default occurs, Landlord shall have the rights and remedies hereinafter set forth to the extent permitted by Law, which shall be distinct, separate and cumulative with and in addition to any other right or remedy allowed under any Law or other provision of this Lease:

1.    Landlord may terminate Tenant's right to possession without termination of this Lease, or Landlord may terminate this Lease and Tenant's right to possession, at any time following a Default; provided, no act of Landlord other than giving notice to Tenant with express statement of termination shall terminate this Lease or Tenant's right to possession. Acts of maintenance, efforts to relet the Premises or the appointment of a receiver on Landlord's initiative to protect Landlord's interest under this Lease shall not constitute a termination of Tenant's right to possession. Upon termination of Tenant's right to possession, Landlord shall have the right to reenter the Premises and recover from Tenant in addition to any other monies provided herein or at Law:  (a) the Worth of the unpaid Rent that had been earned by Landlord at the time of termination of Tenant's right to possession; (b) the Worth of the amount of the unpaid Rent that would have been earned after the date of termination of Tenant's right to possession through the expiration of the Lease Term; and (c) all other expenses incurred by Landlord on account of Tenant's Default, including without limitation any Costs of Reletting (defined below) and Landlord's attorney fees and collection costs. The "Worth" as used for item (a) above is to be computed by allowing interest at the rate of eighteen percent (18%) to accrue on all such unpaid Rent (or such lesser rate required by Law, if any). The Worth as used for item (b) above is to be computed by discounting the amount of Rent at the discount rate of the Federal Reserve Bank of San Francisco at the time of termination of Tenant's right of possession.

2.    In the event Landlord has made improvements to the Premises for the use and occupancy of Tenant, in addition to all other damages and rents to which Landlord shall be entitled on account of Tenant's Default, Landlord shall also be entitled to recover from Tenant a sum equal to:  (a) the unamortized cost to Landlord of the basic building standard Tenant improvement costs, said sum being computed by applying the percentage which the unexpired portion of the Lease Term bears to the total scheduled Lease Term with interest at ten percent (10%) per annum, plus (b) all costs to Landlord of non-Building standard, custom or special Tenant improvements (above basic Building standard improvements) with no adjustment for the unexpired portion of the scheduled Lease Term.

4849-8088-4759, v. 2

3.    In the event of any such reentry by Landlord, Landlord may, at Landlord's option, require Tenant to remove from the Premises any of Tenant's property located thereon. If Tenant fails to do so, Landlord shall not be responsible for the care or safekeeping thereof and may remove any of the same from the Premises and place the same elsewhere in the Building or in storage in a public warehouse at the cost, expense and risk of Tenant with authority to the warehouseman to sell the same in the event that Tenant shall fail to pay the cost of transportation and storage, all in accordance with the rules and regulations applicable to the operation of a public warehouseman's business. In any and all such cases of reentry Landlord may make any repairs in, to or upon the Premises which may be necessary, desirable or convenient, and Tenant hereby waives any and all claims for damages which may be caused or occasioned by such reentry or to any property in or about the Premises or any part thereof.

4.    Landlord may bring suits for amounts owed by Tenant hereunder or any portions thereof, as the same accrue or after the same have accrued, and no suit or recovery of any portion due hereunder shall be deemed a waiver of Landlord's right to collect all amounts to which Landlord is entitled hereunder, nor shall the same serve as any defense to any subsequent suit brought for any amount not therefor reduced to judgment. Landlord may pursue one or more remedies against Tenant and need not make an election of remedies. All rent and other consideration paid by any replacement tenants shall be applied at Landlord's option: (i) first, to the Costs of Reletting (defined below), (ii) second, to the payment of all costs and attorney fees of enforcing this Lease against Tenant or any Guarantor, (iii) third, to the payment of all interest and service charges accruing hereunder, (iv) fourth, to the payment of Rent theretofore accrued, and (v) with the residue, if any, to be held by Landlord and applied to the payment of Rent and other obligations of Tenant as the same become due (and with any remaining residue to be retained by Landlord). "Costs of Reletting" shall include without limitation, all costs and expenses incurred by Landlord for any repairs, improvements or other matters necessary to prepare the Premises for another tenant, brokerage commissions, advertising costs, attorneys' fees, any economic incentives given to enter leases with replacement tenants. With respect to reletting the Premises, Landlord shall only be required to use reasonable efforts that do not exceed such efforts Landlord generally uses to lease other space in the Building, Landlord may continue to lease other portions of the Building or other projects owned or managed by Landlord in the same vicinity before reletting all or a portion of the Premises, and Landlord shall not be required to relet at rental rates less than Landlord's then-existing rates for new leases or terms less favorable to Landlord than those contained herein. The times set forth herein for the curing of Defaults by Tenant are of the essence of this Lease.

## SECTION 17: SUBORDINATION, ATTORNMENT AND LENDER PROTECTION

This Lease is subject and subordinate to all Mortgages now or hereafter placed upon the Property, Building, Premises or any interest of Landlord therein, and all other encumbrances, and matters of public record applicable to the Property, Building or Premises. Whether before or after any foreclosure or power of sale proceedings are initiated or completed by any Lender or a deed in lieu is granted (or any ground lease is terminated), Tenant agrees upon written request of any such Lender or any purchaser at such sale, to attorn and pay Rent to such party, and recognize such party as Landlord (provided such Lender or purchaser shall agree not to disturb Tenant's occupancy so long as Tenant does not Default hereunder, on a form customarily used by, or otherwise reasonably acceptable to, such party). However, in the event of attornment, no Lender shall be: (i) liable for any act or omission of Landlord, or subject to any offsets or defenses which Tenant might have against Landlord (arising prior to such Lender becoming Landlord under such attornment), (ii) liable for any security deposit or bound by any prepaid Rent not actually received by such Lender, or (iii) bound by any modification of this Lease not consented to by such Lender. Any Lender may elect to make this Lease prior to the lien of its Mortgage by written notice to Tenant, and if the Lender of any prior Mortgage shall require, this Lease shall be prior to any subordinate Mortgage; such elections shall be effective upon written notice to Tenant, or shall be effective as of such earlier or later date set forth in such notice. Tenant agrees to give any Lender by certified mail, return receipt requested, a copy of any notice of default served by Tenant upon Landlord, provided that

4849-8088-4759, v. 2

prior to such notice Tenant has been notified in writing (by way of service on Tenant of a copy of an assignment of leases, or otherwise) of the address of such Lender. Tenant further agrees that if Landlord shall have failed to cure such default within the time permitted Landlord for cure under this Lease, any such Lender whose address has been provided to Tenant shall have an additional period of thirty (30) days in which to cure (or such additional time as may be required due to causes beyond such Lender's control, including time to obtain possession of the Property by appointment of receiver, power of sale or judicial action). Should any current or prospective Lender require a modification or modifications to this Lease which will not cause an increased cost or otherwise materially and adversely change the rights and obligations of Tenant hereunder, Tenant agrees that this Lease shall be so modified. Except as expressly provided to the contrary herein, the provisions of this Section shall be self-operative; however Tenant shall execute and deliver, within ten (10) business days after requested, such documentation as Landlord or any Lender may request from time to time, whether prior to or after a foreclosure or power of sale proceeding is initiated or completed, a deed in lieu is delivered, or a ground lease is terminated, in order to further confirm or effectuate the matters set forth in this Section in recordable form (and Tenant hereby authorizes Landlord acting in good faith to execute any such documentation as Tenant's agent and attorney-in-fact). Tenant hereby waives the provisions of any Law (now or hereafter adopted) which may give or purport to give Tenant any right or election to terminate or otherwise adversely affect this Lease or Tenant's obligations hereunder if foreclosure or power of sale proceedings are initiated, prosecuted or completed.

## SECTION 18: ESTOPPEL CERTIFICATES

Tenant shall from time to time, within ten (10) business days after written request from Landlord, execute, acknowledge and deliver a statement certifying: (i) that this Lease is unmodified and in full force and effect or, if modified, stating the nature of such modification and certifying that this Lease as so modified, is in full force and effect (or specifying the ground for claiming that this Lease is not in force and effect), (ii) the dates to which the Rent has been paid, and the amount of any Security Deposit, (iii) that Tenant is in possession of the Premises, and paying Rent on a current basis with no offsets, defenses or claims, or specifying the same if any are claimed, (iv) that there are not, to Tenant's knowledge, any uncured defaults on the part of Landlord or Tenant which are pertinent to the request, or specifying the same if any are claimed, and (v) certifying such other matters, and including such current financial statements, as Landlord may reasonably request, or as may be requested by Landlord's current or prospective Lenders, insurance carriers, auditors, and prospective purchasers (and including a comparable certification statement from any subtenant respecting its sublease). Any such statement may be relied upon by any such parties. If Tenant shall fail to execute and return such statement within the time required herein, Tenant shall be deemed to have agreed with the matters set forth therein, and Landlord acting in good faith shall be authorized as Tenant's agent and attorney-in-fact to execute such statement on behalf of Tenant (which shall not be in limitation of Landlord's other remedies).

## SECTION 19: RIGHTS RESERVED BY LANDLORD

Except to the extent expressly limited herein, Landlord reserves full rights to control the Property (which rights may be exercised without subjecting Landlord to claims for constructive eviction, abatement of Rent, damages or other claims of any kind), including more particularly, but without limitation, the following rights:

A. **General Matters.** To: (i) change the name or street address of the Building or Property or designation of the Premises, (ii) install and maintain signs on the exterior and interior of the Building or Property, and grant any other person the right to do so, (iii) retain at all times, and use in appropriate instances, keys to all doors within and into the Premises, (iv) grant to any person the right to conduct any business or render any service at the Property, whether or not the same are similar to the use permitted Tenant by this Lease, (v) grant any person the right to use separate security personnel and systems respecting access to their premises, (vi) have access for Landlord and other tenants of the Building to any mail chutes located on the Premises according to the rules of the United States Postal Service (and to install or remove such chutes), and (vii) in case of fire, invasion, insurrection, riot, civil disorder,

16

emergency or other dangerous condition, or threat thereof: (a) limit or prevent access to the Building or Property or Premises, (b) shut down elevator service, (c) activate elevator emergency controls, and (d) otherwise take such action or preventative measures deemed necessary by Landlord for the safety of tenants of the Building or Property or the protection of the Building or Property and other property located thereon or therein (but this provision shall impose no duty on Landlord to take such actions, and no liability for actions taken in good faith).

     **B.**    **Access to Premises.**  To enter the Premises in order to: (i) inspect, (ii) supply cleaning service or other services to be provided Tenant hereunder, (iii) show the Premises to current and prospective Lenders, insurers, purchasers, tenants, brokers and governmental authorities, (iv) decorate, remodel or alter the Premises if Tenant shall abandon the Premises at any time, or shall vacate the same during the last one hundred twenty (120) days of the Term (without thereby terminating this Lease), and (v) perform any work or take any other actions under Section 19(C) below, or exercise other rights of Landlord under this Lease or applicable Laws.  However, Landlord shall: (a) provide reasonable advance written or oral notice to Tenant's on site manager or other appropriate person for matters which will involve a significant disruption to Tenant's business (except in emergencies), (b) take reasonable steps to minimize any significant disruption to Tenant's business, and following completion of any work, return Tenant's leasehold improvements, fixtures, property and equipment to the original locations and condition to the fullest extent reasonably possible, and (c) take reasonable steps to avoid materially changing the configuration or reducing the square footage of the Premises, unless required by Laws or other causes beyond Landlord's reasonable control (and in the event of any permanent material reduction, the Rent and other rights and obligations of the parties based on the square footage of the Premises shall be proportionately reduced).  Tenant shall not place partitions, furniture or other obstructions in the Premises which may prevent or impair Landlord's access to the Systems and Equipment for the Property or the systems and equipment for the Premises.  If Tenant requests that any such access occur before or after Landlord's regular business hours and Landlord approves, Tenant shall pay all overtime and other additional costs in connection therewith.

     **C.**    **Changes To The Property.**  To: (i) paint and decorate, (ii) perform repairs or maintenance, and (iii) make replacements, restorations, renovations, alterations, additions and improvements, structural or otherwise (including freon retrofit work), in and to the Building or Property or any part thereof, including any adjacent building, structure, facility, land, street or alley, or change the uses thereof (including changes, reductions or additions of corridors, entrances, doors, lobbies, parking facilities and other areas, structural support columns and shear walls, elevators, stairs, escalators, mezzanines, solar tint windows or film, kiosks, planters, sculptures, displays, and other amenities and features therein, and changes relating to the connection with or entrance into or use of the Building or Property or any other adjoining or adjacent building or buildings, now existing or hereafter constructed). In connection with such matters, Landlord may among other things erect scaffolding, barricades and other structures, open ceilings, close entry ways, restrooms, elevators, stairways, corridors, parking and other areas and facilities, and take such other actions as Landlord deems appropriate. However, Landlord shall: (a) take reasonable steps to minimize or avoid any denial of access to the Premises except when necessary on a temporary basis, and (b) in connection with entering the Premises shall comply with Section 19(B) above.

     **D.**    **New Premises.**  [Intentionally Deleted.]

**SECTION 20:  LANDLORD'S RIGHT TO CURE**

     If Landlord shall fail to perform any obligation under this Lease required to be performed by Landlord, Landlord shall not be deemed to be in default hereunder nor subject to any claims for damages of any kind, unless such failure shall have continued for a period of thirty (30) days after notice thereof by Tenant (provided, if the nature of Landlord's failure is such that more time is reasonably required in order to cure, Landlord shall not be in default if Landlord commences to cure within such period and thereafter

4849-8088-4759, v. 2

**Exhibit A Page 20 of 38**

Case 16-30406-rld11    Doc 254    Filed 04/29/16

diligently seeks to cure such failure to completion). If Landlord shall default and fail to cure as provided herein, Tenant shall have such rights and remedies as may be available to Tenant under applicable Laws, subject to the other provisions of this Lease; provided, Tenant shall have no right of self-help to perform repairs or any other obligation of Landlord, and shall have no right to withhold, set-off, or abate Rent, or terminate this Lease, and Tenant hereby expressly waives the benefit of any Law to the contrary.

## SECTION 21: RELEASE AND INDEMNITY

**A.    Indemnity.**   Except where such claim arises out of the gross negligence or willful misconduct of Landlord or Landlord's agents, Tenant shall indemnify, defend (using legal counsel reasonably acceptable to Landlord) and save Landlord and its property manager (if any) harmless from all claims, suits, losses, damages, fines, penalties, liabilities and expenses (including Landlord's personnel and overhead costs and reasonable attorneys fees and other costs incurred in connection with claims, regardless of whether such claims involve litigation) resulting from any actual or alleged injury (including death) of any person or from any actual or alleged loss of or damage to any property arising out of or in connection with (i) Tenant's occupation, use or improvement of the Premises, or that of its employees, agents or contractors, (ii) Tenant's breach of its obligations hereunder or (iii) any act or omission of Tenant or any subtenant, licensee, assignee or concessionaire of Tenant, or of any officer, agent, employee, guest or invitee of Tenant, or of any such entity in or about the Premises. This indemnity with respect to acts or omissions during the term of this Lease shall survive termination or expiration of this Lease.   Tenant shall promptly notify Landlord of casualties or accidents occurring in or about the Premises. **LANDLORD AND TENANT ACKNOWLEDGE THAT THE INDEMNIFICATION PROVISIONS OF SECTION 29 AND THIS SECTION 21 WERE SPECIFICALLY NEGOTIATED AND AGREED UPON BY THEM.**

**B.    Release.**   Except where such claim arises out of the gross negligence or willful misconduct of Landlord, Tenant hereby fully and completely waives and releases all claims against Landlord for any losses or other damages sustained by Tenant or any person claiming through Tenant resulting from any accident or occurrence in or upon the Premises, including but not limited to: any defect in or failure of Building equipment; any failure to make repairs; any defect, failure, surge in, or interruption of project facilities or services; any defect in or failure of Common Areas; broken glass; water leakage; the collapse of any Building component; any claim or damage resulting from Landlord's repair, maintenance or improvements to any portion of the Building or Property; or any act, omission or negligence of co tenants, licensees or any other persons or occupants of the Building; provided only, that the release contained in this Section 21(B) shall not apply to claims for actual damage to persons or property (excluding consequential damages such as lost profits) resulting directly and solely from Landlord's gross negligence or willful misconduct or from Landlord's breach of its express obligations under this Lease which Landlord has not cured within a reasonable time after receipt of written notice of such breach from Tenant.

**C.    Definitions.**   As used in any Section of this Lease establishing indemnity or release of Landlord, "Landlord" shall include Landlord, its partners, officers, agents, employees and contractors, and "Tenant" shall include Tenant and any person or entity claiming through Tenant.

## SECTION 22: RETURN OF POSSESSION

At the expiration or earlier termination of this Lease or Tenant's right of possession, Tenant shall vacate and surrender possession of the entire Premises in good, neat and clean order and well-maintained condition, ordinary wear and tear excepted, shall surrender all keys and key cards, and any parking transmitters, stickers or cards, to Landlord, and shall remove all personal property and office trade fixtures that may be readily removed without damage to the Premises or Property.   All improvements, fixtures and other items installed by Tenant or Landlord under or with respect to this Lease, shall be the property of Tenant during the Term of this Lease, but at the expiration or earlier termination of this Lease all such improvements, fixtures and other items shall become Landlord's

4849-8088-4759, v. 2

**Exhibit A Page 21 of 38**

property, and shall remain upon the Premises, all without compensation, allowance or credit to Tenant. If Tenant shall fail to perform any repairs or restoration, or fail to remove any items from the Premises required hereunder, Landlord may do so and Tenant shall pay Landlord's charges therefor upon demand. All property removed from the Premises by Landlord pursuant to any provisions of this Lease or any Law may be handled or stored by Landlord at Tenant's expense, and Landlord shall in no event be responsible for the value, preservation or safekeeping thereof. All property not removed from the Premises or retaken from storage by Tenant within thirty (30) days after expiration or earlier termination of this Lease or Tenant's right to possession, shall at Landlord's option be conclusively deemed to have been conveyed by Tenant to Landlord as if by bill of sale without payment by Landlord. Unless prohibited by applicable Law, Landlord shall have a lien against such property for the costs incurred in removing and storing the same. Tenant hereby waives any statutory notices to vacate or quit the Premises upon expiration of this Lease.

## SECTION 23: HOLDING OVER

Unless Landlord expressly agrees otherwise in writing, Tenant shall pay Landlord one hundred fifty percent (150%) of the amount of Base Rent then applicable prorated on a per diem basis for each day Tenant shall fail to vacate or surrender possession of the Premises or any part thereof after expiration or earlier termination of this Lease, together with all damages sustained by Landlord on account thereof. Tenant shall pay such amounts on demand, and, in the absence of demand, monthly in advance. The foregoing provisions, and Landlord's acceptance of any such amounts, shall not serve as permission for Tenant to hold over, nor serve to extend the Term (although Tenant shall remain a tenant-at-sufferance bound to comply with all provisions of this Lease). Landlord shall have the right at any time after expiration or earlier termination of this Lease, or Tenant's right to possession, to reenter and possess the Premises and remove all property and persons therefrom, and Landlord shall have such other remedies for holdover as may be available to Landlord under other provisions of this Lease or applicable Laws.

## SECTION 24: NOTICES

Except as expressly provided to the contrary in this Lease, every notice or other communication to be given by either party to the other with respect hereto or to the Premises, Building or Property, shall be in writing and shall not be effective for any purpose unless the same shall be served personally, or by national air courier service, or United States certified mail, return receipt requested, postage prepaid, to the parties at the addresses set forth in Section 1, or such other address or addresses as Tenant or Landlord may from time to time designate by notice given as above provided. Every notice or other communication hereunder shall be deemed to have been given as of the third business day following the date of such mailing (or as of any earlier date evidenced by a receipt from such national air courier service or the United States Postal Service) or immediately if personally delivered. Notices not sent in accordance with the foregoing shall be of no force or effect until received by the foregoing parties at such addresses required herein.

## SECTION 25: REAL ESTATE BROKERS

Tenant represents that Tenant has dealt only with the broker, if any, designated in Section 1 (whose commission, if any, shall be paid by Landlord pursuant to separate agreement) as broker, agent or finder in connection with this Lease, and agrees to indemnify and hold Landlord harmless from all damages, judgments, liabilities and expenses (including reasonable attorneys' fees) arising from any claims or demands of any other broker, agent or finder with whom Tenant has dealt for any commission or fee alleged to be due in connection with its participation in the procurement of Tenant or the negotiation with Tenant of this Lease. Landlord and Tenant recognize that it is possible that they may hereafter make additional agreements regarding further extension or renewal of this Lease or a new lease or leases for all or one or more parts of the Premises or other space in the Building (or other portions of the Property or other buildings managed by Landlord) for a term or terms commencing after the Commencement Date of this Lease. It is also possible that Landlord and Tenant may hereafter modify this Lease to add additional space or to substitute other space for all or a portion of the Premises. In the

4849-8088-4759, v. 2

event any such additional agreements, modifications to this Lease, or new leases are made, Landlord shall have no obligation to pay any commission or other compensation to any broker or other party engaged by Tenant (including the brokers designated in Section 1) with respect to negotiating or representing Tenant in such matters, regardless of whether under the circumstances such person is or is not regarded by law as an agent of Landlord, and Tenant shall indemnify and hold Landlord harmless from any claim for such compensation. Nothing in this Section 25 shall be construed to require or otherwise obligate Landlord to consider or make any of the above-described additional agreements, modifications to this Lease, or new lease.

## SECTION 26: NO WAIVER

No provision of this Lease will be deemed waived by either party unless expressly waived in writing and signed by the waiving party. No waiver shall be implied by delay or any other act or omission of either party. No waiver by either party of any provision of this Lease shall be deemed a waiver of such provision with respect to any subsequent matter relating to such provision, and Landlord's consent or approval respecting any action by Tenant shall not constitute a waiver of the requirement for obtaining Landlord's consent or approval respecting any subsequent action. Acceptance of Rent by Landlord directly or through any agent or lock-box arrangement shall not constitute a waiver of any breach by Tenant of any term or provision of this Lease (and Landlord reserves the right to return or refund any untimely payments if necessary to preserve Landlord's remedies). No acceptance of a lesser amount of Rent shall be deemed a waiver of Landlord's right to receive the full amount due, nor shall any endorsement or statement on any check or payment or any letter accompanying such check or payment be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the full amount due. The acceptance of Rent or of the performance of any other term or provision from, or providing directory listings or services for, any person or entity other than Tenant shall not constitute a waiver of Landlord's right to approve any Transfer. No delivery to, or acceptance by, Landlord or its agents or employees of keys, nor any other act or omission of Tenant or Landlord or their agents or employees, shall be deemed a surrender, or acceptance of a surrender, of the Premises or a termination of this Lease, unless stated expressly in writing by Landlord.

## SECTION 27: SAFETY AND SECURITY DEVICES, SERVICES AND PROGRAMS

The parties acknowledge that safety and security devices, services and programs provided by Landlord, if any, while intended to deter crime and ensure safety, may not in given instances prevent theft or other criminal acts, or ensure safety of persons or property. The risk that any safety or security device, service or program may not be effective, or may malfunction, or be circumvented by a criminal, is assumed by Tenant with respect to Tenant's property and interests, and Tenant shall obtain insurance coverage to the extent Tenant desires protection against such criminal acts and other losses. Tenant agrees to cooperate in any reasonable safety or security program developed by Landlord or required by Law.

## SECTION 28: TELECOMMUNICATION LINES

**A.** **Telecommunication Lines.** No telecommunication or computer lines shall be installed within or without the Premises without Landlord's prior consent in accordance with Section 10. Landlord disclaims any representations, warranties or understandings concerning Landlord's Building computer systems, or the capacity, design or suitability of Landlord's riser Lines, Landlord's main distribution frame ("MDF") or related equipment. If there is, or will be, more than one tenant on any floor, at any time, Landlord may allocate, and periodically reallocate, connections to the terminal block based on the proportion of square feet each tenant occupies on such floor, or the type of business operations or requirements of such tenants, in Landlord's reasonable discretion. Landlord may arrange for an independent contractor to review Tenant's requests for approval to install any telecommunication or computer lines, monitor or supervise Tenant's installation, connection and disconnection of any such lines, and provide other such services, or Landlord may provide the same. In each case, all such work shall be performed in accordance with Section 10. At the expiration or earlier termination of this Lease,

20

and at Landlord's request, Tenant at its cost shall remove all wires, cable or other computer or telecommunication lines or systems installed by or for Tenant and Tenant shall restore the Premises and Building to the condition existing prior to Tenant's installation.

**B.** **Limitation of Liability.** Unless due solely to Landlord's intentional misconduct or grossly negligent acts, Landlord shall have no liability for damages arising, and Landlord does not warrant that the Tenant's use of any telecommunication or computer lines or systems ("Lines") will be free, from the following (collectively called "Line Problems"): (i) any eavesdropping, wire tapping or theft of long distance access codes by unauthorized parties, (ii) any failure of the Lines to satisfy Tenant's requirements, or (iii) any capacitance, attenuation, cross talk or other problems with the Lines, any misdesignation of the Lines in the MDF room or wire closets, or any shortages, failures, variations, interruptions, disconnections, loss or damage caused by or in connection with the installation, maintenance, replacement, use or removal of any other Lines or equipment at the Building or Property by or for other tenants at the Property or Building, by any failure of the environmental conditions at or the power supply for the Building to conform to any requirements of the Lines or any other problems associated with any Lines or by any other cause. Under no circumstances shall any Line Problems be deemed an actual or constructive eviction of Tenant, render Landlord liable to Tenant for abatement of any Rent or other charges under the Lease, or relieve Tenant from performance of Tenant's obligations under the Lease as amended herein. Landlord in no event shall be liable for any loss of profits, business interruption or other consequential damage arising from any Line Problems.

### SECTION 29: SUBSTANCES; DISRUPTIVE ACTIVITIES

**A.** **Hazardous Substances.**

1. _Presence and Use of Hazardous Substances_. Tenant shall not, without Landlord's prior written consent of Landlord's sole discretion, keep on or around the Premises, Building or Property, for use, disposal, treatment, generation, storage or sale, any substances designed as, or containing components designated as, a "hazardous substance," "hazardous material," hazardous waste," "regulated substance" or "toxic substance" (collectively referred to as "Hazardous Substances"). With respect to any such Hazardous Substances, Tenant shall: (i) comply promptly, timely and completely with all Laws for reporting, keeping and submitting manifests, and obtaining and keeping current identification numbers; (ii) submit to Landlord true and correct copies of all reports, manifests and identification numbers at the same time as they are required to be and/or are submitted to the appropriate governmental authorities; (iii) within five (5) days of Landlord's request, submit written reports to Landlord regarding Tenant's use, storage, treatment, transportation, generation, disposal or sale of Hazardous Substances and provide evidence satisfactory to Landlord of Tenant's compliance with all applicable Laws; (iv) allow Landlord or Landlord's agent or representative to come on the Premises at all times to check Tenant's compliance with all applicable Laws; (v) comply with minimum levels, standards or other performance standards or requirements which may be set forth or established for certain Hazardous Substances (if minimum standards or levels are applicable to Hazardous Substances present on the Premises, such levels or standards shall be established by an on-site inspection by the appropriate governmental authorities and shall be set forth in an addendum to this Lease); and (vi) comply with all applicable Laws regarding the proper and lawful use, sale, transportation, generation, treatment and disposal of Hazardous Substances.

2. _Monitoring Costs_. Any and all costs incurred by Landlord and associated with Landlord's monitoring of Tenant's compliance with this Section 29, including Landlord's attorneys' fees and costs, shall be additional Rent and shall be due and payable to Landlord immediately upon demand by Landlord.

**B.** **Cleanup Costs, Default and Indemnification.**

1.    Tenant shall be fully and completely liable to Landlord for any and all cleanup costs, and any and all other charges, fees, penalties (civil and criminal) imposed by any governmental authority with respect to Tenant's use, disposal, transportation, generation and/or sale of Hazardous Substances, in or about the Premises, Building or Property.

2.    Tenant shall fully indemnify, defend and save Landlord and Landlord's Lender, if any, harmless from any and all of the costs, fees, penalties and charges assessed against or imposed upon Landlord (as well as Landlord's and Landlord's Lender's attorneys' fees and costs) as a result of Tenant's use, disposal, transportation, generation and/or sale of Hazardous Substances.

3.    Upon Tenant's default under this Section 29, in addition to the rights and remedies set forth elsewhere in this Lease, Landlord shall be entitled to the following rights and remedies: (i) at Landlord's option, to terminate this lease immediately; and/or (ii) to recover any and all damages associated with the default, including, but not limited to cleanup costs and charges, civil and criminal penalties and fees, loss of business and sales by Landlord and other tenants of the Building or Property, any and all damages and claims asserted by third parties and Landlord's attorney's fees and costs.

**C.    Disruptive Activities.**  Tenant shall not:  (1) produce, or permit to be produced, any intense glare, light or heat except within an enclosed or screened area and then only in such manner that the glare, light or heat shall not, outside the Premises, be materially different than the light or heat from other sources outside the Premises; (2) create, or permit to be created, any sound pressure level which will interfere with the quiet enjoyment of any real property outside the Premises, or which will create a nuisance or violate any governmental law, rule, regulation or requirement; (3) create, or permit to be created, any floor or ground vibration that is materially discernible outside the Premises; (4) transmit, receive, or permit to be transmitted or received, any electromagnetic, microwave or other radiation which is harmful or hazardous to any person or property in or about the Premises, Building or Property; or (5) create, or permit to be created, any noxious odor that is disruptive to the business operations of any other tenant in the Building or Property.

## SECTION 30:  DISABILITIES ACTS

The parties acknowledge that the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.) and regulations and guidelines promulgated thereunder ("ADA"), and any similarly motivated state and local Laws, as the same may be amended and supplemented from time to time (collectively referred to herein as the "Disabilities Acts") establish requirements for business operations, accessibility and barrier removal, and that such requirements may or may not apply to the Premises, Building and Property depending on, among other things: (i) whether Tenant's business is deemed a "public accommodation" or "commercial facility", (ii) whether such requirements are "readily achievable", and (iii) whether a given alteration affects a "primary function area" or triggers "path of travel" requirements.  The parties hereby agree that: (a) Landlord shall perform any required Disabilities Acts compliance in the common areas, except as provided below, (b) Tenant shall perform any required Disabilities Acts compliance in the Premises, and (c) Landlord may perform, or require that Tenant perform, and Tenant shall be responsible for the cost of, Disabilities Acts "path of travel" and other requirements triggered by any public accommodation or other use of, or alterations in, the Premises by Tenant.  Tenant shall be responsible for Disabilities Acts requirements relating to Tenant's employees, and Landlord shall be responsible for Disabilities Acts requirements relating to Landlord's employees.

## SECTION 31:  DEFINITIONS

**A.**    "Building" shall mean the structure (or the portion thereof operated by Landlord) identified in Section 1 within which the Premises are located.

**B.**    "Default Rate" shall mean twelve percent (12%) per annum, or the highest rate permitted by applicable Law, whichever shall be less.

4849-8088-4759, v. 2

**Exhibit A Page 25 of 38**

Case 16-30406-rld11    Doc 254    Filed 04/29/16

**C.** "Holidays" shall mean all federal holidays, and holidays observed by the State of Oregon, including New Year's Day, President's Day, Memorial Day, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day, Christmas Day, and to the extent of utilities or services provided by union members engaged at the Property, such other holidays observed by such unions.

**D.** "Landlord" shall mean only the landlord from time to time, except for purposes of any provisions defending, indemnifying and holding Landlord harmless hereunder, "Landlord" shall include past, present and future landlords and their respective partners, beneficiaries, trustees, officers, directors, employees, shareholders, principals, agents, affiliates, successors and assigns.

**E.** "Law" or "Laws" shall mean all federal, state, county and local governmental and municipal laws (including without limitation Disabilities Acts), statutes, ordinances, rules, regulations, codes, decrees, orders and other such requirements, applicable equitable remedies and decisions by courts in cases where such decisions are considered binding precedents in the State of Oregon, and decisions of federal courts applying the Laws of such State, at the time in question. This Lease shall be interpreted and governed by the Laws of the State of Oregon.

**F.** "Lender" shall mean the holder of any Mortgage at the time in question, and where such Mortgage is a ground lease, such term shall refer to the ground Landlord (and the term "ground lease" although not separately capitalized is intended throughout this Lease to include any superior or master lease).

**G.** "Mortgage" shall mean all mortgages, deeds of trust, ground leases and other such encumbrances now or hereafter placed upon the Property, Building or Premises, or any part thereof or interest therein, and all renewals, modifications, consolidations, replacements or extensions thereof, and all indebtedness now or hereafter secured thereby and all interest thereon.

**H.** "Premises" shall mean the area within the Building identified in Section 1 and Exhibit B. Possession of areas necessary for utilities, services, safety and operation of the Building, including the Systems and Equipment, fire stairways, perimeter walls, space between the finished ceiling of the Premises and the slab of the floor or roof of the Building there above, and the use thereof together with the right to install, maintain, operate, repair and replace the Systems and Equipment, including any of the same in, through, under or above the Premises in locations that will not materially interfere with Tenant's use of the Premises, are hereby excepted and reserved by Landlord, and not demised to Tenant.

**I.** "Property" shall mean the real property legally described in Exhibit A of this Lease together with all landscaping, improvements and personal property located thereon and related to the Building or its operation or maintenance.

**J.** "Rent" shall have the meaning specified therefor in Section 4.

**K.** "Systems and Equipment" shall mean any plant, machinery, transformers, duct work, cable, wires, and other equipment, facilities, and systems designed to supply light, heat, ventilation, air conditioning and humidity, or any other services or utilities, or comprising or serving as any component or portion of the electrical, gas, steam, plumbing, sprinkler, communications, alarm, security, or fire/life/safety systems or equipment, or any elevators, escalators or other mechanical, electrical, electronic, computer or other systems or equipment for the Building, except to the extent that any of the same serves particular tenants exclusively (and "systems and equipment" without capitalization shall refer to such of the foregoing items serving particular tenants exclusively).

**L.** "Tenant" shall be applicable to one or more persons or entities as the case may be, the singular shall include the plural, and if there be more than one Tenant, the obligations thereof shall be

4849-8088-4759, v. 2

**Exhibit A Page 26 of 38**

joint and several. When used in the lower case, "tenant" shall mean any other tenant, subtenant or occupant of the Building or Property.

**M.** "Tenant's Share" of Expenses and Taxes pursuant to Section 4 shall be the percentage set forth in Section 1, but if the rentable area of the Premises or Building shall change, Tenant's Share shall thereupon become the rentable area of the Premises divided by the rentable area of the Building, excluding any parking facilities, subject at all times to adjustment under Section 4. Tenant acknowledges that the "rentable area of the Premises" under this Lease includes the usable area, without deduction for columns or projections, multiplied by a load or conversion factor, to reflect a share of certain areas, which may include lobbies, corridors, mechanical, utility, janitorial, boiler and service rooms and closets, restrooms, and other public, common and service areas, all as reasonably determined by Landlord. Except as provided expressly to the contrary herein, the "rentable area of the Building" shall include all rentable area of all space leased or available for lease at the Building, which Landlord may reasonably re determine from time to time, to reflect re configurations, additions or modifications to the Building.

## SECTION 32: OFFER

The submission and negotiation of this Lease shall not be deemed an offer to enter the same by Landlord (nor an option or reservation for the Premises), but the solicitation of such an offer by Tenant. Tenant agrees that its execution of this Lease constitutes a firm offer to enter the same which may not be withdrawn for a period of thirty (30) days after delivery to Landlord. During such period and in reliance on the foregoing, Landlord may, at Landlord's option, deposit any Security Deposit and Rent, proceed with any plans, specifications, alterations or improvements, and permit Tenant to enter the Premises, but such acts shall not be deemed an acceptance of Tenant's offer to enter this Lease, and such acceptance shall be evidenced only by Landlord signing and delivering this Lease to Tenant.

## SECTION 33: MISCELLANEOUS

**A.** **Captions and Interpretation.** The captions of the Sections and Paragraphs of this Lease are for convenience of reference only and shall not be considered or referred to in resolving questions of interpretation. Tenant acknowledges that it has read this Lease and that it has had the opportunity to confer with counsel in negotiating this Lease; accordingly, this Lease shall be construed neither for nor against Landlord or Tenant, but shall be given a fair and reasonable interpretation in accordance with the meaning of its terms. The neuter shall include the masculine and feminine, and the singular shall include the plural. The term "including" shall be interpreted to mean "including, but not limited to."

**B.** **Survival of Provisions.** All obligations (including indemnity, Rent and other payment obligations) or rights of either party arising during or attributable to the period prior to expiration or earlier termination of this Lease shall survive such expiration or earlier termination.

**C.** **Severability.** If any term or provision of this Lease or portion thereof shall be found invalid, void, illegal, or unenforceable generally or with respect to any particular party, by a court of competent jurisdiction, it shall not affect, impair or invalidate any other terms or provisions or the remaining portion thereof, or its enforceability with respect to any other party.

**D.** **Short Form Lease.** Neither this Lease nor any memorandum of lease or short form lease shall be recorded by Tenant, but Landlord or any Lender may elect to record a short form of this Lease, in which case Tenant shall promptly execute, acknowledge and deliver the same on a form prepared by Landlord or such Lender.

**E.** **Light, Air and Other Interests.** This Lease does not grant any legal rights to "light and air" outside the Premises nor any particular view visible from the Premises, nor any easements, licenses or other interests unless expressly contained in this Lease.

4849-8088-4759, v. 2

**Exhibit A Page 27 of 38**

**F.　Authority.** If Tenant is any form of corporation, partnership, limited liability company or partnership, association or other organization, Tenant and all persons signing for Tenant below hereby represent that this Lease has been fully authorized and no further approvals are required, and Tenant is duly organized, in good standing and legally qualified to do business in the Premises (and has any required certificates, licenses, permits and other such items).

**G.　Partnership Tenant.** If Tenant is a partnership, all current and new general partners shall be jointly and severally liable for all obligations of Tenant hereunder and as this Lease may hereafter be modified, whether such obligations accrue before or after admission of future partners or after any partners die or leave the partnership. Tenant shall cause each new partner to sign and deliver to Landlord written confirmation of such liability, in form and content satisfactory to Landlord, but failure to do so shall not avoid such liability.

**H.　Financial Statements.** [Intentionally Deleted.]

**I.　Successors and Assigns; Transfer of Property and Security Deposit.** Each of the terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties' respective heirs, executors, administrators, guardians, custodians, successors and assigns, subject to Section 14 respecting Transfers and Section 17 respecting rights of Lenders. Subject to Section 17, if Landlord shall convey or transfer the Property or any portion thereof in which the Premises are contained to another party, such party shall thereupon be and become landlord hereunder and shall be deemed to have fully assumed all of Landlord's obligations under this Lease accruing during such party's ownership, including the return of any Security Deposit (provided Landlord shall have turned over such Security Deposit to such party), and Landlord shall be free of all such obligations accruing from and after the date of conveyance or transfer.

**J.　Rent and Taxes.** In addition to the provisions of Section 15, all Rent due Landlord herein is exclusive of any sales, business and occupational gross receipts or tax based on rents or tax upon this Lease or tax measured by the number of employees of Tenant or the area of the Premises or any similar tax or charge. If any such tax or charge be hereafter enacted, Tenant shall reimburse to Landlord the amount thereof with each monthly Base Rent payment. If it shall not be lawful for Tenant to so reimburse Landlord, the monthly Base Rent payable to Landlord under this Lease shall be revised to net Landlord the same net rental after imposition of any such tax or charge upon Landlord as would have been payable to Landlord prior to the imposition of such tax or charge. Tenant shall not be liable to reimburse Landlord any federal income tax or other income tax of a general nature applicable to Landlord's income.

**K.　Limitation of Landlord's Liability.** Tenant agrees to look solely to Landlord's interest in the Building for the enforcement of any judgment, award, order or other remedy under or in connection with this Lease or any related agreement, instrument or document or for any other matter whatsoever relating thereto or to the Building or Premises. Under no circumstances shall any present or future, direct or indirect, principals or investors, general or limited partners, officers, directors, shareholders, trustees, beneficiaries, participants, advisors, managers, employees, agents or affiliates of Landlord, or of any of the other foregoing parties, or any of their heirs, successors or assigns have any liability for any of the foregoing matters.

**L.　Signage.** Landlord shall not be required to provide signage for Tenant or the Premises.

**M.　Applicable Law and Other Matters.** This Lease shall be interpreted and construed under and pursuant to the laws of the State of Oregon. Any action regarding or arising from this Lease shall be brought in the Oregon State District Court located in the county where the Property is located. Time is of the essence of this Lease. In the event an attorney is engaged by either party to enforce the

4849-8088-4759, v. 2

terms of this Lease or in the event suit is brought relating to or arising from this Lease, the prevailing party shall be entitled to recover from the other party its reasonable attorney fees and costs.

     **N.**     **Confidentiality.** Tenant shall keep the content and all copies of this Lease, related documents or amendments now or hereafter entered, and all proposals, materials, information and matters relating thereto strictly confidential, and shall not disclose, disseminate or distribute any of the same, or permit the same to occur, except to the extent reasonably required for proper business purposes by Tenant's employees, attorneys, insurers, auditors, lenders and Transferees (and Tenant shall obligate any such parties to whom disclosure is permitted to honor the confidentiality provisions hereof), and except as may be required by Law or court proceedings.

## SECTION 34: ENTIRE AGREEMENT

     This Lease, together with the Riders, Exhibits and other documents listed in Section 1 (which collectively are hereby incorporated where referred to herein and made a part hereof as though fully set forth), contains all the terms and provisions between Landlord and Tenant relating to the matters set forth herein and no prior or contemporaneous agreement or understanding pertaining to the same shall be of any force or effect, except any such contemporaneous agreement specifically referring to and modifying this Lease, signed by both parties. Neither this Lease, nor any Riders or Exhibits referred to above may be modified, except in writing signed by both parties.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

4849-8088-4759, v. 2

IN WITNESS WHEREOF, the parties have executed this Lease as of the date first set forth above.

**LANDLORD:**     **SFII Naito Old Town, LLC,**
a Delaware limited liability company

By:     Swift Fund II GP, LLC,
      a Delaware limited liability company, its Manager

      By: _____
      Name: Craig Firpo
      Its:      Vice President

**TENANT:**     SeaPort Airlines Inc, an Alaska Corporation

By: _____
      John Beardsley, Chairman

4849-8088-4759, v. 2

## EXHIBIT A

### (Legal Description of Property)

Lots 5, 6, 7 and 8, Block 18, COUCH'S ADDITION TO THE CITY OF PORTLAND, in the City of Portland, County of Multnomah and State of Oregon.  EXCEPTING THEREFROM those portions lying within the boundaries of N.W. 2nd Avenue and N.W. 3rd Avenue.

4849-8088-4759, v. 2

## EXHIBIT B

### (Floor Plate Showing Premises Shaded)



SECOND FLOOR

Exhibit B – 1

# RIDER ONE

## RULES

1.    Tenant shall not place anything, or allow anything to be placed near the glass of any window, door, partition or wall that may, in Landlord's judgment, appear unsightly from outside of the Building.

2.    The Building directory shall be available to Tenant solely to display names and their location in the Building, which display shall be as directed by Landlord.

3.    The sidewalks, halls, passages, exists, entrances, elevators and stairways shall not be obstructed by Tenant or used by Tenant for any purposes other than for ingress to and egress from the Premises. Tenant shall lend its full cooperation to keep such areas free from all obstruction and in a clean and sightly condition and shall move all supplies, furniture and equipment as soon as received directly to the Premises and move all such items and waste being taken from the Premises (other than waste customarily removed by janitorial staff employees) directly to the shipping platform at or about the time arranged for removal therefrom. The halls, passages, exists, entrances, elevators, stairways, balconies and roof are not for the use of the general public and Landlord shall, in all cases, retain the right to control and prevent access thereto by all persons whose presence in the judgment of Landlord, reasonably exercised, shall be prejudicial to the safety, character, reputation and interests of the Building. Neither Tenant nor any employee or invitee of Tenant shall go upon the roof of the Building.

4.    The toilet rooms, urinals, wash bowls, kitchen sinks and other apparatuses shall not be used for any purposes other than that for which they were constructed, and no foreign substance of any kind whatsoever shall be thrown therein, and to the extent caused by Tenant or its employees or invitees, the expense of any breakage, stoppage or damage resulting from the violation of this rule shall be borne by Tenant.

5.    Tenant shall comply with all present or future Building conservation programs intended to promote environmental conservation and sustainable resources, and in connection therewith, Tenant shall cooperate and participate in Building policies, programs and procedures respecting the same including, but not limited to, recycling (both within the Premises and in the Building common areas), energy and water conservation, and indoor air quality. Tenant shall take responsibility for employee compliance and education, and upon request, Tenant shall work with Landlord, any governmental conservation management organization or any conservation-related committees or entities.

6.    Tenant shall not install or operate any refrigerating, heating or air conditioning apparatus, or carry on any mechanical business without the prior written consent of Landlord.

7.    Tenant shall not use the Premises for housing, lodging or sleeping purposes; or permit preparation or warming of food in the Premises (warming of coffee and individual meals in a microwave with employees and guest excepted). Tenant shall not occupy or use the Premises or permit the Premises to be occupied or used for any purpose, act or thing which is a violation of any Laws or which may be dangerous to persons or property.

8.    Tenant shall not bring upon, use or keep in the Premises or the Building any kerosene, sterno, gasoline or flammable or combustible fluid or material, or any other articles deemed hazardous to persons or property, or use any method of heating or air conditioning other than that supplied by Landlord.

9.    Tenant's employees, visitors or guests shall not carry on to the Building or Tenant Premises any firearm or dangerous weapon listed below. This is not intended to replace or override

4849-8088-4759, v. 2

Tenant's written employee policy, as Tenant has the right to determine unacceptable devices or restrict employees from bringing personal safety devices onto the Premises. However, Tenant's written employee policy should adhere to these minimum restrictions:

  a.  Any device from which a projectile may be fired by an explosive

  b.  Any simulated firearm operating by gas or compressed air

  c.  Sling shot

  d.  Metal knuckles

  e.  Any spring blade knife

  f.  Any knife which opens or is ejected open by an outward, downward thrust or movement

  g.  Any knife/sword which has a blade that exceeds 3¼ inches

  h.  Any instrument that can be used as a club and poses a reasonable risk or injury

10.  Building management or building security personnel should be notified immediately if any Tenant employee, visitor or guest is found with a firearm or dangerous weapon in violation of this policy. Local law enforcement will be called promptly, if necessary, to help handle the situation. Any Tenant employee concerned about personal safety may request an escort (e.g. to a parking lot off Premises) or other appropriate intervention by security personnel.

11.  Except as otherwise expressly provided in the Lease, Landlord shall have sole power to direct electricians as to where and how telephone and other wires are to be introduced. No boring or cutting for wires is to be allowed without the consent of Landlord. The location of telephones, call boxes and other office equipment affixed to the Premises shall be subject to the approval of Landlord.

12.  Except as otherwise expressly provided in the Lease, no additional locks shall be placed upon any doors, windows or transoms in or to the Premises. Tenant shall not change existing locks or the mechanism thereof. Upon termination of the Lease, Tenant shall deliver to Landlord all keys and access cards for offices, rooms, parking lot and toilet rooms which have been furnished to Tenant.

13.  In the event of the loss of keys or access cards furnished by Landlord, Tenant shall pay Landlord for such replacement.

14.  Tenant shall not install linoleum, tile, carpet or other floor covering so that the same shall be affixed to the floor of the Premises in any manner except as approved by Landlord.

15.  [Intentionally Deleted.]

16.  Tenant shall cause all doors to the Premises to be closed and securely locked and shall turn off all utilities, lights and machines before leaving the Premises at the end of the day.

17.  Without the prior written consent of Landlord, Tenant shall not use the name of the Building or any picture of the Building in connection with, or in promoting or advertising the business of, Tenant, except Tenant may use the name and address of the Building as the address of its business.

4849-8088-4759, v. 2

18.     Tenant shall cooperate fully with Landlord to assure the most effective operation of the Premises' or the Building's heating and air conditioning, and shall refrain from attempting to adjust any controls, other than room thermostats installed for Tenant's use. Tenant shall keep corridor doors closed.

19.     Tenant assumes full responsibility for protecting the Premises from theft, robbery, and pilferage, which may arise from a cause other than Landlord's negligence, which includes keeping doors locked and other means of entry to the Premises closed and secured.

20.     Solicitors and transients shall be reported to security of the Building or as Landlord otherwise requests.

21.     Tenant shall not advertise the business, profession or activities of Tenant conducted in the Building in any manner that violates the letter or spirit of any code of ethics adopted by any recognized association or organization pertaining to such business, profession or activities.

22.     No vehicles and no animals or pets shall be allowed in the Premises, halls, freight docks or any other parts of the Building, except for service dogs. Tenant shall not make or permit any noise, vibration or odor to emanate from the Premises, or do anything therein tending to create, or maintain, a nuisance, or do any act tending to injure the reputation of the Building.

23.     Notwithstanding the prohibition on vehicles in rule 22, Tenant's employees and visitors shall be permitted to store bicycles in the bicycle parking facility in the Building.

24.     Tenant's employees shall be permitted to use the gym and shower facilities located in the Building, subject to compliance with all rules posted in such facilities or set forth from time to time by Landlord.

25.     Tenant acknowledges that Building security problems may occur which may require the employment of extreme security measures in the day-to-day operation of the Building. Accordingly:

26.     Landlord may, at any time, or from time to time, or for regularly scheduled time periods, as deemed advisable by Landlord and/or its agents, in their sole discretion, require that persons entering or leaving the Building or the Land identify themselves to watchmen or other employees designated by Landlord, by registration, identification or otherwise:

　　　　a.     Tenant agrees that it and its employees will cooperate fully with Building employees in the implementation of any and all security procedures.

　　　　b.     Such security measures shall be the sole responsibility of Landlord, and Tenant shall have no liability for any action taken by Landlord in connection therewith, it being understood that Landlord is not required to provide any security procedures and shall have no liability for such security procedures or the lack thereof.

27.     Tenant shall not disturb the quiet enjoyment of any other tenant.

28.     Except as otherwise expressly provided in the Lease, Tenant shall not provide or contract for any janitorial services or cleaning without Landlord's written consent and then only subject to supervision of Landlord and at Tenant's sole responsibility and by janitors or cleaning contractors or employees at all times satisfactory to Landlord.

29.     Landlord may retain a pass key to the Premises and be allowed admittance thereto at all times to enable its representatives to examine the Premises from time to time and to exhibit the same and

4849-8088-4759, v. 2

**Exhibit A Page 35 of 38**

Landlord ma place and keep on the windows and doors of the Premises at any time signs advertising the Premises for Rent.

30. No equipment, mechanical ventilators, awnings, special shades or other forms of window covering shall be permitted either inside or outside the windows of the Premises without the prior written consent of Landlord, and then only at the expense and risk of Tenant, and they shall be of such shape, color, material, quality, design and make as may be approved by Landlord.

31. Tenant shall not during the term of this Lease canvas or solicit other tenants of the Building for any purpose.

32. Tenant shall list all furniture, equipment and similar articles Tenant desires to remove from the Premises or the Building and deliver a copy of such list to Landlord and procure a removal permit from the Office of the Building authorizing Building employees to permit such articles to be removed.

33. Tenant shall not overload any floors in the Premises or any public corridors or elevators in the Building.

34. Whenever Landlord's consent, approval or satisfaction is required under these Rules, then unless otherwise stated, any such consent, approval or satisfaction must be obtained in advance, such consent or approval may be granted or withheld in Landlord's sole discretion, and Landlord's satisfaction shall be determined in its sole judgment.

35. Tenant and its employees shall cooperate in all fire drills conducted by Landlord in the Building.

4849-8088-4759, v. 2

## RIDER TWO

## GREEN ADDENDUM

(1) The term "Green Standard" or words of similar import shall include the U.S. EPA's Energy Star® rating, the Green Building Initiative's Green Globes TM for Continual Improvement of Existing Buildings (Green GlobesTM-CIEB), the U.S. Green Building Council's Leadership in Energy and Environmental Design (LEED), and/or a current and similar organization with equally rigorous environmentally and sustainable practices.

(2) Building Expenses shall also include: (i) all costs of maintaining, managing, reporting, commissioning, and recommissioning the Building or any part thereof that was designed and/or upgraded to be sustainable and conform with one or more Green Standard rating systems, and (ii) all costs of applying, reporting and commissioning the Building or any part thereof to seek certification under one or more Green Standard rating systems, provided however, the cost of such applying, reporting and commissioning of the Building or any part thereof to seek certification shall be a cost capitalized and thereafter amortized as an annual Expense under GAAP.

(3) Tenant shall not use or occupy the Premises for any unlawful purpose or in any manner that will constitute waste, nuisance or unreasonable annoyance to Landlord or other tenants of the Building. Tenant shall not use or operate the Premises in any manner that will cause the Building or any part thereof not to conform with Landlord's sustainability practices or a Green Standard certification of the Building.

(4) This building is or may become in the future certified under a Green Standard or operated pursuant to Landlord's sustainable building practices. Landlord's sustainability practices address whole-building operations and maintenance issues including chemical use; indoor air quality; energy efficiency; water efficiency; recycling programs; exterior maintenance programs; and systems upgrades to meet green building energy, water, Indoor Air Quality, and lighting performance standards. All construction and maintenance methods and procedures, material purchases, and disposal of waste must be in compliance with minimum standards and specifications, in addition to all applicable laws.

(5) Tenant shall use proven energy and carbon reduction measures, including energy efficient bulbs in task lighting; use of lighting controls; closing shades as needed to avoid over heating the space; turning off lights and equipment at the end of the work day; purchasing ENERGY STAR® qualified equipment, including but not limited to lighting, office equipment, commercial and residential quality kitchen equipment, vending and ice machines, and; purchasing products certified by the U.S. EPA's Water Sense® program.

(6) Tenant covenants and agrees, at its sole cost and expense: (a) to comply with all present and future laws, orders and regulations of the Federal, State, county, municipal or other governing authorities, departments, commissions, agencies and boards regarding the collection, sorting, separation, and recycling of garbage, trash, rubbish and other refuse (collectively, "trash"); (b) to comply with Landlord's recycling policy as part of Landlord's sustainability practices where it may be more stringent than applicable law; (c) to sort and separate its trash and recycling into such categories as are provided by law or Landlord's sustainability practices; (d) that each separately sorted category of trash and recycling shall be placed in separate receptacles as directed by Landlord, and; (e) that Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Landlord or Tenant by reason of Tenant's failure to comply with the provisions of this Section. Where possible, the Landlord shall provide a composting program and encourage the Tenant to sort and separate its trash and recycling from compost material.

(7) Landlord shall provide and install all original bulbs and tubes for Building standard lighting fixtures within the Premises and all replacement tubes for such lighting, the cost of which shall be included in Building Expenses; all other bulbs, tubes and lighting fixtures for the Premises shall be

4849-8088-4759, v. 2

provided and installed by Tenant at Tenant's cost and expense, and must comply with Landlord's sustainability practices, including any Green Standard rating system, concerning the environmental compliance of the Building or the Premises, as the same may change from time to time. All maintenance and repairs made by Tenant must comply with Landlord's sustainability practices, including any Green Standard rating system concerning the environmental compliance of the Building or the Premises, as the same may change from time to time.

(8) Any and all Tenant Improvement Work and/or Alterations is strongly encouraged to be performed in accordance with Landlord's sustainability practices, including any Green Standard or third-party rating system concerning the environmental compliance of the Building or the Premises, as the same may change from time to time. Tenant is further encouraged to engage a qualified third party LEED or Green Standard professional or similarly qualified professional during the design phase through implementation of any Tenant Improvement Work and/or Alterations to review all plans, material procurement, demolition, construction and waste management procedures to ensure they are in full conformance with Landlord's sustainability practices, as aforesaid. Any and all waste and debris from Tenant Improvement Work and/or Alterations must meet the minimum requirements set forth by the Green Standard.

(9) Landlord does not permit space heaters or other energy-intensive equipment unnecessary to conduct Tenant's business without written approval by Landlord. Any space conditioning equipment that is placed in the Premises for the purpose of increasing comfort to tenants shall be operated on sensors or timers that limit operation of equipment to hours of occupancy in the areas immediately adjacent to the occupying personnel.

(10) Tenant acknowledges that it is Landlord's intention that the Property be operated in a manner which is consistent with Landlord's sustainability practices. Tenant is required to comply with these practices within its Premises.

(11) Tenant shall dispose of, in an environmentally sustainable manner, any equipment, furnishings, or materials no longer needed by Tenant and shall recycle or re-use such items in accordance with Landlord's sustainability practices. Tenant is responsible for reporting this activity to Landlord in a format determined by Landlord.

(12) Landlord currently provides janitorial service only after 5:30 p.m. five days per week (excluding legal holidays). Landlord reserves the right to conduct routine cleaning during normal business hours in accordance with Landlord's sustainability practices and will be done in such a way as to minimize disruption.

030230/00082/6514603v2

In re  SeaPort Airlines, Inc.;
Chapter 11 Bankruptcy Case No. 16-30406-rld11


CERTIFICATE - TRUE COPY

DATE:            April 29, 2016

DOCUMENT:       DEBTOR'S MOTION TO REJECT NONRESIDENTIAL REAL
                PROPERTY LEASE (SFII Naito Old Town, LLC)

        I hereby certify that I prepared the foregoing copy of the foregoing named
document and have carefully compared the same with the original thereof and it is a
correct copy therefrom and of the whole thereof.

CERTIFICATE OF SERVICE

        I hereby certify that I served a copy of the foregoing on:

SeaPort Airlines, Inc.          Michael J. Edelman           SFII Naito Old Town, LLC
Attn:  Timothy Sieber           VEDDER PRICE                 c/o CT Corporation System,
816 SW First Avenue             1633 Broadway, 47th Floor    Registered Agent
Portland, Oregon 97204          New York, New York 10019     388 State Street, Ste. 420
                                                             Salem, OR 97301
Franklin C. Adams
POB 1028                        Tulare County Tax Collector
Riverside, CA 92502-1028        Attn Jorge Garcia            SFII Naito Old Town, LLC
                                Deputy Tax Collector         260 California St., Ste. 300
                                221 S Mooney Blvd Rm 104-E   San Francisco, CA 94111
Mark J. Wolfson                 Visalia, CA 93291-4593
100 N Tampa St #2700
Tampa, FL 33602

by mailing a copy of the above-named document to each of them in a sealed envelope,
addressed to each of them at his or her last known address.  Said envelopes were
deposited in the Post Office at Portland, Oregon, on the below date, postage prepaid.

        I hereby certify that the foregoing was served on all CM/ECF participants through
the Court's Case Management/Electronic Case File system on the date set forth below.

        Dated:  April 29, 2016


                        VANDEN BOS & CHAPMAN, LLP


                        By:/s/Robert J Vanden Bos_____
                            Robert J Vanden Bos, OSB #78100
                            Douglas R. Ricks, OSB #044026
                            Christopher N. Coyle, OSB #07350
                            Of Attorneys for Debtor-in-Possession


**PAGE 1 of 1** - CERTIFICATE OF SERVICE